(No. 14425.—Reversed and remanded.)

THE PEOPLE *ex rel.* Patrick J. Carr, County Collector, Appellant, *vs.* THE SANITARY DISTRICT OF CHICAGO, Appellee.

*Opinion filed February 22, 1922—Rehearing denied April 7, 1922.*

1. TAXES—*when burden is on sanitary district to prove its property exempt.* On application for judgment for delinquent taxes against lots owned by the Sanitary District of Chicago, if the county collector has made out a *prima facie* case the burden is on the district to prove its claim that the lots were exempt because they were within the district, were in its exclusive possession and were used exclusively for the purposes of the district as a municipal corporation.

2. SAME—*when sanitary district is estopped to claim exemption.* Where the Sanitary District of Chicago has furnished to the taxing authorities, for assessment purposes, a list of its lands not used exclusively for public purposes but leased for farming purposes, it is estopped in a proceeding by the county collector to collect the taxes assessed against the leased lands to claim exemption of said lands on the ground that the tenants did not take possession of the property and paid no rent.

APPEAL from the County Court of Cook county; the Hon. F. S. RIGHEIMER, Judge, presiding.

ROBERT E. CROWE, State's Attorney, WILLIAM H. DUVAL, and W. W. DEARMOND, (HAYDEN N. BELL, of counsel,) for appellant.

WILLIAM F. MULVIHILL, (MORTON S. CRESSY, PRESTON CLARK, and WARWICK A. SHAW, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On an application of Patrick J. Carr, county treasurer and *ex-officio* collector of Cook county, for judgment and order of sale against twenty-eight or more lots belonging to the Sanitary District of Chicago, the taxes for which were delinquent for the year 1920, the objections of the sanitary

district were sustained as to eleven of the lots, described as lots Nos. 88, 90, 92, 94, 96, 98, 100, 108, 109, 110 and 146 in Sanitary District Trustees' subdivision of the right of way from the west line of section 7, township 38, north, range 13, east of the third principal meridian, to the west line of sections 6 and 7, township 37, north, range 12, east of the third principal meridian, in Cook county. Carr, as county treasurer and collector aforesaid, has prosecuted this appeal from that judgment.

The written objections filed by the district were, that the lots in question were assessed by mistake or fraud, and were assessed so excessively high as to amount to a fraudulent assessment against appellee. Another of the written objections is, in substance, that the lots are exempt from taxation because they are within the sanitary district and are used by the district solely and exclusively for public purposes. This last objection is the only one relied upon in this appeal by the appellee, and the other objections are therefore waived by it.

It is stipulated in the record by the parties that the collector by his proofs made out a *prima facie* case in the regular way. The rule is well established by this court in many decisions, that in this class of cases such *prima facie* case casts the burden upon the objector to establish by the weight of the evidence the defense or defenses stated in his objections. The burden was therefore cast upon appellee in this case to prove that it was in the exclusive possession of such lots and that they were within its territory and used exclusively for its purposes. Such proof would render its property exempt from taxation under the provisions of the statute, as it is a municipal corporation. *Sanitary District* v. *Hanberg,* 226 Ill. 480.

The evidence in the record bears mostly upon the questions or objections of appellee that were waived, the same relating mostly to the value or worth of the lands in question for farming purposes. There is very little evidence

bearing upon the proposition that is argued by appellee. What evidence there is in the record has been greatly confused by the very great number of statements made by both counsel to the court while the evidence was in progress. Much more than half of the record is taken up by such statements, and in some places it is almost impossible to separate or distinguish what part of the record is testimony of the witness and what part is statements by the counsel. It does, however, clearly appear from the evidence that all of the lots in question on this appeal are included in its right of way and border on the channel of the district and are located within the district.

It was proved that all of the lots in question lie between the canal of appellee and the Illinois and Michigan canal, and it appears that they run consecutively in a continuous line between those canals except lot No. 146. Lots Nos. 88 to 110, inclusive, are 600 feet in width and taper down to 125 feet in width, lots Nos. 109 and 110 being about 125 feet wide. A strip 50 to 100 feet of these lots along the channel of appellee is prepared and used to protect the bank from breaking. On this strip are located appellee's transmission lines and poles leading to its power plant, and this strip is not serviceable or usable for farming or other purposes except for the special purpose of appellee. This strip is part of the berm or spoil-bank along the channel, and the remainder of the lots between that strip and the Illinois and Michigan canal is a continuation of the spoil-bank, and the proof shows that this remainder is generally very productive for agricultural purposes, some parts of it producing corn equal to the finest farm lands in the vicinity. Lots Nos. 102 to 106, both inclusive, and sixteen other lots, Nos. 150 to 181, were valuable as farm land, and were in the possession of other parties and being farmed as farm land on leases from appellee, and for those reasons the objections to the taxes on those lots were withdrawn by appellee in the court below.

It is positively proved by the evidence in the record that all the lots in question except lot No. 146, and except the strip upon which the transmission lines of appellee leading to its power plant are located, were leased by appellee to tenants for the year 1920 for farming purposes at a rental value of five dollars per acre, and, as we understand the record, the tenants in addition to that were to pay the taxes on such land leased by them.   It is also positively proved by appellant that appellee furnished to the assessing authorities a list showing that those lots, or parts of them, were leased to tenants as aforesaid, and that such list was furnished to enable the assessors to know and to determine what part of appellee's property or lots was assessable, as all such lots as were leased for profit by appellee were taxable.   Robert Berry, a witness called for appellant, testified positively that such list was furnished him showing what was leased, and that lots Nos. 88, 90, 92, 94, 96, 98 and 100 were on that list, and that the assessment was spread on them in accordance with the list furnished by appellee.   It further appears from appellant's evidence that the leased part of lot No. 88 was four acres, and that the remainder thereof, 3.91 acres, was figured as exempt, as property not leased.   It does not definitely appear from his evidence what part of the other of the six lots was assessed or what part was exempt.   It also appears from the testimony of the witness Wolcott that lots Nos. 102 to 110 were used for farming purposes, but he could not state the proportions.   It was positively admitted by appellee that all of the lots in question except No. 146 were leased to tenants for farming purposes, and that appellee did furnish such list to the assessing authorities showing that they were leased to tenants for farming purposes or the portions thereof that could be used for such purposes, but its claim is that the tenants did not take possession of said lots, and that the district therefore derived no revenue from them and was in the actual possession of them in 1920.   As we understand the

record, all these lots were rented during 1919 and taxed during that year,—at least most of them. It further appears from the record that counsel for appellee who tried this case for it stated positively to the court as to lot No. 109 that it was rented to a Mr. Gregory, and that there was no reason why the 1919 quadrennial valuation or assessment should not stand. As to lot No. 146 there is no showing in the record whether it was leased or not. The only evidence for the appellee concerning this lot was as to its value, which its witness placed at one dollar per acre. Appellant proved that it.was good land, and that some of the spoil-bank on it was shale and some of it muck that comes out of the river and that it raises the very finest corn. As to this lot appellee failed to make the proof required to show that it was exempt.

The list of appellee furnished to the taxing authorities and showing what part of its land was leased and what part was not leased was not introduced in evidence and it appears nowhere in the record. The evidence of its contents, so far as it applied to the lots in question, was proven to the court without any objection, and there is absolutely no question that such a list was furnished by appellee and no question that the lots were leased by appellee, as it admitted it. Its contention now is that the parties who leased them did not take possession and did not pay the rent, and therefore the lots must be treated as exempt property. We think that as appellee in furnishing this list, and the information therein contained, caused the property to be assessed, it was estopped to claim, on application by the collector for judgment, that its lots were exempt. This court held in *Sanitary District* v. *Hanberg, supra,* and *Sanitary District* v. *Gifford,* 257 Ill. 424, that where the district desires to claim an exemption as to its lands, a part of which is devoted exclusively to public purposes and a part to farm purposes at a profit to it, it is its duty to inform the assessor what part is devoted exclusively to public pur-

poses and what part is farm land and not exempt. In accordance with this ruling it apparently furnished to the taxing authorities said list, and those authorities had a right to rely on the same and invoke the doctrine of estoppel in the district's attempt to defeat judgment for taxes on the collector's application.

The judgment of the county court is reversed and the cause is remanded, with directions to enter the proper judgment for the taxes, etc.

*Reversed and remanded, with directions.*

---

(No. 14376.—Reversed and remanded.)
EDWARD A. SHEDD, Appellant, *vs.* JOHN C. PATTERSON, Appellee.

*Opinion filed February 22, 1922—Rehearing denied April 7, 1922.*