# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## Hampton Roads Sanitation District Commission v. Arthur Smith.

January 21, 1952.

Record No. 3860.

Present, All the Justices.

The opinion states the case.

*Richard B. Kellam* and *W. R. Ashburn,* for the plaintiff in error.

*Kearney & Cofer,* for the defendant in error.

SMITH, J., delivered the opinion of the court.

The Hampton Roads Sanitation District covers a wide area embracing as it does the cities of Hampton, Newport News, Norfolk, and South Norfolk, the counties of Elizabeth City and Warwick, and portions of the counties of Princess Anne, Norfolk, Isle of Wight, Nansemond, and York. See Acts of 1940, chapter 407, section 3, page 731, as amended. Some funds have been provided by the State legislature for the operation of the commission and a large fund has been supplied by the Federal government for construction of the trunk lines, pumping stations and other facilities necessary to put the plant in operation, in addition to $6,500,000 received from a bond issue.

The sum of $30.11 which is involved in this appeal may seem small to some, but the issue presented is important to many. It

involves the power of a political subdivision to terminate the invidious practice of polluting the tidal waters of the Commonwealth.

Two specific questions are posed for our consideration. The first is whether we have jurisdiction to hear this appeal and the second is the propriety of the trial court's judgment in denying relief to the plaintiff, Hampton Roads Sanitation District Commission. A brief background of the case would initially seem to be in order.

Acts of Assembly, 1938, chapter 335, page 510, contain legislation known as the "Sanitation Districts Law of Nineteen Hundred and Thirty-eight." This act, as subsequently amended, is now codified in chapter 3, of title 21 of the Code of Virginia, 1950. The Hampton Roads Sanitation District was originally provided for in Acts of Assembly, 1938, chapter 334, page 505, though this particular act never became effective, and the district was actually created by Acts of 1940, chapter 407, page 730, for the purpose of taking advantage of the Sanitation Districts Law of Nineteen Hundred and Thirty-eight. Chapter 407 of the Acts of 1940, as amended, is now codified by reference in chapter 5, of title 21 of the Code of Virginia, 1950.

The defendant, Arthur Smith, is a resident of Elizabeth City county. The county sewerage system had serviced his property, but when the plaintiff began operating under the statute the defendant's sewer was connected to its system along with others in the vicinity, so that their waste is currently discharged through the treatment and disposal facilities of the plaintiff. When the plaintiff duly billed the defendant at its regular rate for this service, the defendant refused to pay. Accordingly, the plaintiff sued the defendant and the trial justice for Elizabeth City county granted it a judgment for $30.11. The defendant then appealed to the circuit court for Elizabeth City county where the cause was tried *de novo* without a jury. The trial court held that although the defendant was admittedly a property owner, and not a commercial user as claimed, whose sewage was properly being discharged through the disposal facilities of the plaintiff, the plaintiff had failed in the purpose for which it was created by the legislature in that there had not been a 100% elimination of the pollution in the entire area under its control. The trial court deemed this to be a breach of contract by the plaintiff which barred its right to a recovery on the contract from the

defendant. From this reversal of the judgment originally favorable to it, the plaintiff has appealed.

The first point on which we shall focus our attention is whether there is jurisdiction for us to hear this appeal. Section 8-464 of the Code of 1950, reads as follows:

"No petition shall be presented for an appeal from, or writ of error or supersedeas to, any judgment of a circuit or corporation court, which is rendered on an appeal from a judgment of a trial justice, except in cases in which the controversy is for a matter of three hundred dollars or more in value or amount, *and except in cases in which it is otherwise expressly provided;* * * *." (Italics supplied).

From this language, it would appear that we have no jurisdiction to hear this matter on appeal unless it be a case in which it is "otherwise expressly provided." In section 8-462, Code of 1950, among the cases "otherwise expressly provided" for are those involving:

"(a)(vi) The right of the State, or a county, or *municipal corporation to levy tolls or taxes,* * * *." (Italics supplied).

Within the coverage of Code section 8-462, is the plaintiff a municipal corporation and is the service fee it seeks to collect a toll? Section 8-462, it must be remembered, is a remedial section which should be liberally construed. *Southern R. Co.* v. *Hill*, 106 Va. 501, 56 S. E. 278.

There is considerable lack of harmony in the decisions from various States concerning which local governmental subdivisions are included within the term "municipal corporation." Some of these entities are almost perfect in their organization and can scarcely be distinguished from municipal corporations proper; others are hardly worthy of the designation "corporation" as they are imperfectly organized and have very few powers. Between these two clearly-differentiated extremes, there are a large number of governmental agencies variously described as "political", "public", "civil", or otherwise, including drainage districts, fire districts, irrigation districts, sanitary districts, and so on *ad infinitum.*

These organizations are sometimes declared by statute to be corporations, and court decisions and text-writers often recognize them as a peculiar class of public institutions and generally refer to them as "quasi-corporations", "quasi-municipal corporations", or "quasi-municipalities". Such

entities are not municipal corporations in the strict sense of the term, but where it appears that the legislature intended that they should be so construed, the designation "municipal corporation" is often used in a broad or generic sense to include those "quasi-municipal corporations" which are created to perform an essentially public service. See 1 McQuillan, Municipal Corporations § 128 (Smith's ed. 1940); Restatement, Restitution § 75; 62 C. J. S. Municipal Corporations § 5.

A corporation authorized by statute to supply water to the residents of a particular district has been held to be a municipal corporation as relates to the hearing of taxpayers concerning the cost of water. *Drum* v. *University Place Water Dist.*, 144 Wash. 585, 258 P. 505. Likewise, in *State* v. *Little River Drainage Dist.* 291 Mo. 72, 236 S. W. 15, a drainage district incorporated under a State statute declaring such districts to be public corporations was held to be a municipal corporation within the tax exemption provision of the State constitution, and the Sanitation District of Chicago was held to be a municipal corporation under the provision in the Illinois constitution which permits tax exemption of property belonging to a municipal corporation where exemption is expressly provided for by statute. *Sanitary Dist.* v. *Hanberg*, 226 Ill. 480, 80 N. E. 1012; *People* v. *Sanitary Dist.*, 302 Ill. 350, 134 N. E. 733. See annotation 108 A. L. R. 580, *et seq.*

The case of *Neuenschwander* v. *Washington Suburban Sanitary Comm.*, 187 Md. 67, 48 A. (2d) 593, discussed the Washington Suburban Sanitary Commission which was created to construct, maintain, and operate systems for water supply, sewerage, drainage, and refuse collection. This commission was held to be a municipal corporation within a statute requiring ninety-days written notice of claim against a municipal corporation for injury or damage, before suit could be brought on a claim. The Maryland court said, 48 A. (2d) at page 597:

"The attributes of a municipal corporation are possessed by Washington Suburban Sanitary Commission to an extent amply sufficient to bring it within that designation. It was created in 1918 by an Act of the Legislature, Laws 1918, c. 122, by which the members of the Commission were constituted a body corporate with authority to construct, maintain and operate systems for water supply, sewerage, drainage, and refuse collection and disposal in a designated sanitary district in Montgomery and

Prince George's Counties. The Sanitary Commission has authority to appoint all employees necessary to carry out the purposes of the Act. It can purchase land and exercise the power of eminent domain. It is also empowered to issue bonds, and to determine the amount to be raised by taxation for its purposes in Montgomery and Prince George's Counties.''

In other jurisdictions, some park districts, boards of education, sewerage commissions, drainage districts, and the like, have been held to be municipal corporations, whereas, others have not. For example, in Illinois a sanitary district has been held to be a municipal corporation, *Chicago, etc., R. Co.* v. *Sanitary Dist.,* 350 Ill. 542, 183 N. E. 585, but the California court has held otherwise, *In re Werner,* 129 Cal. 567, 62 P. 97. Further, it has been held that a housing authority was a municipal corporation, *Wells* v. *Housing Authority,* 213 N. C. 744, 197 S. E. 693, whereas, a different result was reached in *State* v. *Housing Authority,* 190 La. 710, 182 So. 725.

These apparent contradictions and conflicts, however, even within the same jurisdiction, can be resolved by a concentration on two basic factors. The first is, how many attributes of a municipal corporation does the entity in dispute possess? The second is, in the light of this initial consideration, what is the particular purpose for which it is sought to determine whether or not a municipal corporation is present?

To begin with, there can be no doubt that the State may delegate to municipalities the power to provide for the preservation of the public health, *Ragsdale* v. *Danville,* 116 Va. 484, 82 S. E. 77, and the sanitation district under discussion was created to cope with a health problem involving a vast area covering cities and counties of great population, which could not feasibly be solved by the individual efforts of each city and county involved.

Applying the first principle to the instant case, we find that the following attributes of a municipal corporation are possessed by the Hampton Roads Sanitation District. Code, section 21-154, provides that each such district "is hereby created as a body corporate and politic", and section 21-155 defines the powers of the commission as follows: "Each commission, *constituting a corporation* is hereby invested with the rights, powers and authority and charged with the duties set forth in this chapter, and shall constitute a *political subdivision of the Com-*

*monwealth* established as a governmental instrumentality to provide for the *public health and welfare."* (Italics supplied). Included specifically, among others, are the following powers: to have a common seal; to sue and be sued; to enter into contracts; to acquire, hold and dispose of its revenues, personal and real property (including the power of eminent domain); to borrow money and issue bonds, etc. Moreover, the bonds and property owned by the district or commission are exempt from taxation, and interest on the bonds takes the same status under tax laws as the interest on bonds of other political subdivisions of the State. It is further provided that the management of the corporation is vested in a board or commission of five members, who are appointed by the Governor of the Commonwealth.

Clothed with these essential powers to serve as a political subdivision of the Commonwealth, it is not a mere auxiliary of a city or county government.

■ While it is true that the more attributes of a municipal corporation an agency has the more likely it is to be treated as a municipal corporation, the final decision rests on the specific issue of each case. Our analysis of the plethora of decisions on this subject is that a commission, such as that before us, may be held to be a municipal corporation for some purposes, but not for others. Stated more specifically, there is more likelihood of holding an agency to be a municipal corporation when the pivotal point is one of procedure, see *Caldwell* v. *Board of Education,* 127 Misc. Rep. 492, 216 N. Y. S. 501, than there is when a question of substantive law is involved. See *State* v. *Board of Park Com'rs,* 131 W. Va. 417, 47 S. E. (2d) 689.

■ Section 8-462 (a) (vi) of the Code of 1950 was enacted by the General Assembly at the extra session of 1902-3-4, chapter 499, page 778, amending section 3454 of the Code of 1887. At that time the peculiar creature of the law with which we are here concerned was probably not within the contemplation of the legislature, since this particular type of corporation was first provided for in 1938. A liberal interpretation of this jurisdictional provision requires an expansion of the meaning of the statute to meet those cases which are clearly within the spirit or reason of the law, provided such an interpretation is not inconsistent with the language used. If the sanitation district with which we are here concerned has the general attributes of a municipal corporation in the usual sense of the term, and we

have already seen that it has, then it must be taken to be within the sphere of the legislative intent as expressed in the jurisdictional enactment. We so hold. Similar statutes have been so construed in other jurisdictions; *e.g., Caldwell* v. *Board of Education, supra.*

Here we should point out that we are not unmindful of our decision in *Strawberry Hill Land Corp.* v. *Starbuck,* 124 Va. 71, 97 S. E. 362, decided in 1918. In that case it was held that a drainage district established by the General Assembly was not a private corporation within the provisions of Art. XII, § 153 of the constitution relating to private corporations. In so holding Judge Prentis stated, at page 78, that "there is authority for holding that drainage districts are quasi municipal corporations. The sounder view, in our opinion, is that a drainage district is neither a private corporation or association, nor is it either a municipal corporation or a public institution owned or controlled by the State." It should be noted that this language was not indispensable to the decision of the court, since the holding of the case is merely that a drainage district is not a private corporation.

■ A toll is nothing more than an authorized charge for the use of a special facility. *Masters* v. *Duval County,* 114 Fla. 205, 154 So. 172. Here again in comparable legislation from other States it has been held that a sewerage service fee is a toll; *e.g.,* see *Madera* v. *Black,* 181 Cal. 306, 184 P. 397, and cases there cited. Indeed, section 21-181 of the Code expressly speaks of "fees, rents and charges being in the nature of use or service charges. * * * ."

■ We are, therefore, satisfied that we have jurisdiction to hear this appeal. Under section 8-462 (a)(vi) of the Code of 1950 the plaintiff is a municipal corporation, and this case involves a judgment concerning its right to levy tolls.

■ Next we turn to a discussion of the disposition of the case on the merits by the trial court. There the judge properly recognized that in the light of our recent decision in *Bott* v. *Hampton Roads Sanitation Dist. Comm.,* 190 Va. 775, 58 S. E. (2d) 306, the act in question was constitutional; that the defendant was subject to potential liability to the plaintiff; and that this liability sprang from contract. He concluded, however, that since the plaintiff had breached this contract, it could not recover under it. The breach was thought to have been occasioned by the

fact that the plaintiff admitted the system was only 90% completed. In other words, although it is conceded that the plaintiff is servicing the defendant properly to the extent of 100% of his own individual sewage, since the plaintiff's system has not as yet been extended throughout the area under its control, it cannot recover any tolls from the 90% now being serviced, which 90%, of course, includes the defendant. Needless to say, if the plaintiff cannot collect from this particular defendant, it cannot collect from any of the 90% group. In so holding, we feel that reversible error was committed by the trial court.

Section 21-169 of the Code states that "The purposes of every commission shall be the *relief* of the tidal waters of the district from pollution and the consequent improvement of conditions affecting the public health and the natural oyster beds, rocks and shoals." (Italics supplied).

It is nowhere stated in this legislation that the plaintiff must wholly prevent the happening of any pollution at any future time in order to be permitted to function, nor is it anywhere said that the extent of such relief must amount to as much as 90% within any fixed period, or indeed any percentage at any fixed time. Neither the degree of relief, nor the degree of improvement in terms of time is specified in the Act and the legislature intended to entrust the quantity and rate of improvement which could be made to the judgment and ability of the plaintiff, subject to the supervisory power of the legislature and perhaps also to the executive, since it is provided in section 21-162 of the Code that members of the plaintiff commission may be suspended or removed by the Governor at his pleasure.

That the plaintiff was to have large discretion to determine the time and manner of accomplishing the objects for which it was created is further indicated by section 21-171 of the Code in which it is declared:

"The commission is authorized and directed when in the judgment of the commission its sewage disposal system, *or part thereof,* will permit, to collect from any and all public sewage systems within the district all sewage and treat and dispose of the same in such manner as to promote the purposes of the commission." (Italics supplied).

A condition precedent to a successful recovery by the plaintiff against any given individual would naturally be reasonable service to such individual. But we cannot see why any one

individual who is properly serviced can refuse to pay any regular charge which is due merely on the ground that there are others whom the plaintiff has not as yet begun to service.

In this connection we are not unmindful of the admonition, that even the Lord did not create the world in one day. Let the plaintiff, therefore, be paid for the performance of satisfactory service as the work progresses and the system grows. Code section 21-180 so states.

The judgment of the trial court is reversed, and under authority of section 8-493 of the Code, judgment for $30.11 with interest from August 9, 1949, will be entered in this court in favor of the plaintiff.

*Reversed and final judgment.*