172 S.E.2d 831 (1970)
210 Va. 645
CITY OF RICHMOND
v.
RICHMOND METROPOLITAN AUTHORITY.
Supreme Court of Appeals of Virginia.
March 9, 1970.
William L. Wimbish, Asst. City Atty. (Conard B. Mattox, Jr., City Attorney, on brief), for appellant.
Charles W. Laughlin, Richmond (J. Edward Betts, Christian, Barton, Parker, Epps & Brent, Richmond, on brief), for appellee.
Before I'ANSON, CARRICO, GORDON, HARRISON, COCHRAN and HARMAN, JJ.
HARMAN, Justice.
The City of Richmond, hereinafter referred to as City, levied and collected real estate taxes for the entire calendar year 1967 upon property located within the city.
Subsequent to the time these taxes were paid, but within the calendar year 1967, the Richmond Metropolitan Authority, hereinafter referred to as Authority, purchased certain parcels of real estate in the city. At the settlement of each property transfer, the taxes for the year 1967 were prorated between the Authority and the prior owners. Such owners assigned to the Authority any claim for a refund of these taxes to which they might be entitled.
The Authority then applied to the Collector of City Taxes for a refund of that portion of real estate taxes for the calendar year 1967 beginning with the date of acquisition of such real estate by the Authority and ending with the end of the calendar year. The Authority based its claim for a refund on Code § 58-822, which provides for a proration of real estate taxes whenever property is acquired by "this State or any county or municipality *832 thereof * * *." (Emphasis supplied.)
The City denied that the Authority, as assignee, was entitled to the refund on the basis that the Authority was not embraced within the term "municipality" as used in Code § 58-822.
The City instituted a Bill for Declaratory Judgment in the Law and Equity Court of the City of Richmond on March 27, 1968, in which it sought to have the court declare that the Authority was not a purchaser as contemplated by Code § 58-822 and therefore was not entitled to a pro rata refund of taxes for the year 1967.
The Law and Equity Court heard the case and entered a final decree on May 29, 1968, holding that Authority is embraced within the term municipality as used in Code § 58-822, and any person whose property is given to, sold to or taken in any manner whatsoever by the Authority is entitled to a credit or refund of taxes and levies in accordance with the provisions of Code § 58-822. To review this ruling we granted the City a writ of error.
"By both judicial recognition and common usage `municipality' is a modern synonym of `municipal corporation'." St. Louis Housing Authority v. City of St. Louis, 361 Mo. 1170, 1177, 239 S.W.2d 289, 294 (1951). See also Neuenschwander v. Washington Suburban Sanitary Commission, 187 Md. 67, 74, 48 A.2d 593, 597 (1946) and State ex rel. Koontz v. Board of Park Commissioners, 131 W.Va. 417, 424, 47 S.E.2d 689, 694 (1948).
There are a multitude of decisions in the various states concerning whether local governmental subdivisions are included within the term "municipal corporation". The decisions, however, are far from uniform and often there are contradictions and conflicts even within the same jurisdiction.
This court has had occasion to consider this question in Hampton Roads Sanitation District Commission v. Smith, 193 Va. 371, 376, 68 S.E.2d 497, 500 (1952), where we set out the two basic factors which must be considered in determining whether or not a particular entity is in fact a municipal corporation. "The first is, how many attributes of a municipal corporation does the entity in dispute possess? The second is, in the light of this initial consideration, what is the particular purpose for which it is sought to determine whether or not a municipal corporation is present?"
This court then went on to list those attributes of a municipal corporation which we deemed essential to viability as a municipal corporation in that instance. Those attributes set out are as follows:
(1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth;
(2) Creation to serve a public purpose;
(3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenues, personal and real property;
(4) Possession of the power of eminent domain;
(5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state;
(6) Management of the corporation vested in a board of directors or a commission.
With these essential characteristics in mind, we will now examine the legislation creating the Authority.
The Richmond Metropolitan Authority was created by Acts of Assembly of Va., Ch. 178, §§ 33-255.44:11 to 33-255.44:32 (1966). The sections which are pertinent *833 to our examination provide in part as follows:
"§ 33-255.44:12. Creation of the Authority.There is hereby created a political subdivision and public body corporate and politic of the Commonwealth of Virginia to be known as the `Richmond Metropolitan Authority' * * * to be governed by a Board of Directors consisting of eleven members * * *.
"§ 33-255.44:13. Powers of the Authority.That in order to alleviate highway congestion, promote highway safety, expand highway construction, increase the utility and benefits and extend the services of public highways, * * * and otherwise contribute to the economy, industrial and agricultural development and welfare of the Commonwealth and the City of Richmond and Counties of Henrico and Chesterfield, the Authority shall have the following powers:
"(a) To contract and be contracted with; to sue and be sued; and to adopt and use a seal and to alter the same at its pleasure;
"(b) To acquire and hold real or personal property necessary or convenient for its purposes;
* * * * * *
"(f) The Authority is authorized and empowered to acquire by the exercise of the power of eminent domain any lands, property, rights, rights-of-way, franchises, easements * * *.
* * * * * *
"(p) To borrow money and issue bonds, notes or other evidences of indebtedness for any of its corporate purposes * * *.
"§ 33-255.44:21. Exemption from Taxation.All property, real and personal, and all rights and interests therein and the income of the Authority, the revenue bonds and the interest thereon, and the transfer thereof and any profit made on the sale thereof, shall at all times be free from taxation or assessment by the Commonwealth and by any municipality, county or other political subdivision thereof."
Thus it is plain that the Authority possesses those attributes of a municipal corporation which we had earlier deemed essential to existence of a municipal corporation and is not a mere auxiliary of a city or county government.
The Proration Act, Code § 58-822, was enacted by the General Assembly in 1922 as a remedial statute to provide relief for taxpayers whose property "shall have been or may be given to, sold to or taken in any manner whatsoever by this State or any county or municipality thereof * * *." As a remedial statute it requires a liberal interpretation to meet those cases which are clearly within the spirit or reason of the law, provided such an interpretation is not inconsistent with the language of the statute. Hampton Roads Sanitation District Commission v. Smith, supra, 193 Va. at 377, 68 S.E.2d at 501. See also Virginia Brewing Company v. Webber, 167 Va. 67, 72, 187 S.E. 447, 449 (1936), and Hasson v. City of Chester, 67 W.Va. 278, 281, 67 S.E. 731, 733 (1910).
Section 183 of the Virginia Constitution delineates property exempt from local taxation. Among others, it exempts:
"(a) Property owned directly or indirectly by the Commonwealth or any political subdivision thereof * * *." (Emphasis supplied.)
The act creating the Authority specifically provides that the property, bonds and income of the Authority are exempt from taxation. Therefore, the property purchased by the Authority in 1967 would not be assessed for taxation subsequent to the date it was purchased.
In discussing the Proration Act in Warwick County v. City of Newport News, 153 Va. 789, 817, 151 S.E. 417, 426 (1930), we *834 quoted with approval the following language of the trial judge:
"Taxes are assessed against property and the owner for and in consideration of the use and enjoyment of property by the owner and in cases where the owner has been deprived of the use and enjoyment of his property by the State or municipality, or the property has been acquired by the State or municipality, it was competent for the Legislature to provide that he should not be required to pay taxes when and after his use and enjoyment have ceased."
In the present case the original property owners have been deprived of the use and enjoyment of their property by a "political subdivision and public body corporate and politic of the Commonwealth". After being acquired by the Authority, the property is exempt from further taxation by virtue of the enacting legislation and the Constitution of Virginia.
We, therefore, conclude that it is within the purview of the Proration Act and not inconsistent with the language of that Act to hold that the Richmond Metropolitan Authority is a "municipal corporation" and as such is embraced within the term "municipality" as used in the Proration Act, Code § 58-822.
Affirmed.