## COUNTY OF YORK

### V.

## PENINSULA AIRPORT COMMISSION

Record No. 850873

June 10, 1988

Present: All the Justices

Thomas W. Athey, County Attorney, for appellant.
Herbert V. Kelly (James R. Richards, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

The dispositive issue framed in this appeal is whether the Peninsula Airport Commission (PAC) is a political subdivision within the meaning of Article X, Section 6(a), of the Virginia Constitution and former Code § 58-12(1) (now, Code § 58.1-

3606) and, as such, exempt from taxation by the County of York (the County).

By Acts 1946, c. 22, the General Assembly provided that, if any two or more of the counties of Warwick, Elizabeth City, and York, the cities of Newport News and Hampton, and the town of Phoebus resolve "that there is need for an airport commission to be created for the purpose of establishing and operating one or more airports or landing fields for all such political subdivisions, an airport commission, to be known as 'The Peninsula Airport Commission', shall thereupon exist". Appropriate resolutions were adopted, and PAC began operations of an airport on land it acquired in the County and in the adjacent City of Newport News.

In 1984, the County's Commissioner of the Revenue assessed real estate taxes totalling $32,866.84 for the years 1981-1984 on the 406 acres of PAC's property situated in the County. PAC paid the taxes in full and then filed this action at law challenging the assessment and seeking reimbursement. The trial court ruled that PAC was a municipal corporation and that its land was exempt from taxation under the Virginia Constitution and former Code § 58-12(1). Accordingly, the court ordered the County to refund all taxes paid.

On appeal, the County attacks the trial court's decision on three grounds. The County asserts that PAC is not a municipal corporation and that, even if it is, its property is not exempt from taxation. Finally, the County argues that, even if PAC qualifies for tax exemption, the exemption does not extend to that portion of the property PAC had leased to third parties.

Article X, Section 6(a), of the Virginia Constitution provides in pertinent part:

> Except as otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local . . . :
>
> (1) Property owned directly or indirectly by the Commonwealth or any political subdivision thereof . . . .

Section 6(c) of Article X states that the General Assembly may "restrict or condition . . . but not extend" an exemption created by subsection 6(a). *See Richmond* v. *Day Nursery Ass'n*, 207 Va. 561, 562 n.1, 151 S.E.2d 370, 372 n.1 (1966); *Hollywood Cemetery Co.* v. *Commonwealth*, 123 Va. 106, 110, 96 S.E. 207,

208 (1918). Former Code § 58-12(1) tracked the language of subsection 6(a)(1). The County argues that the trial court erred in holding that PAC's property was tax exempt absent a ruling that it was a "political subdivision" of the Commonwealth. While the trial court did not use that term, we do not find its order fatally flawed. The transcript shows that the court used the term "municipal corporation" interchangeably with the term "political subdivision" throughout the evidentiary hearing and without objection by counsel. And, indeed, we have said that municipal corporations are "political subdivisions of the State". *R. F. & P. Co.* v. *City of Richmond*, 145 Va. 225, 238, 133 S.E. 800, 803-04 (1926); *see also Portsmouth* v. *Va. Ry. & P., No. 1244*, 141 Va. 54, 66, 126 S.E. 362, 365 (1925); *Portsmouth* v. *Va. Ry. & P., No. 1243*, 141 Va. 44, 47, 126 S.E. 366, 367 (1925).

█ Certain commissions, authorities, and other "special district" bodies are sometimes labeled "quasi-municipal corporations".

> Such entities are not municipal corporations in the strict sense of the term, but where it appears that the legislature intended that they should be so construed, the designation 'municipal corporation' is often used in a broad or generic sense to include those 'quasi-municipal corporations' which are created to perform an essentially public service.

*Hampton Rds. San. Dist. Comm.* v. *Smith*, 193 Va. 371, 374-75, 68 S.E.2d 497, 499 (1952) (citations omitted).

We have been required to determine the character of several such entities for taxation and sovereign-immunity purposes. As this Court first explained in *Hampton Rds. San. Dist. Comm.*, in categorizing a particular entity, the first inquiry is "how many attributes of a municipal corporation does the entity in dispute possess?" *Id.* at 376, 68 S.E.2d at 500. We have identified six attributes pertinent to that inquiry:

(1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth;

(2) Creation to serve a public purpose;

(3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenue, personal and real property;

(4) Possession of the power of eminent domain;

(5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state;

(6) Management of the corporation vested in a board of directors or a commission.

*Richmond* v. *Metropolitan Authority*, 210 Va. 645, 647, 172 S.E.2d 831, 832 (1970).

■ The County's appeal focuses on the first of these attributes. As we have said and as counsel for the County acknowledged in oral argument, the County's position is that, if the legislative act that authorized the creation of PAC did not identify it expressly as a political subdivision, PAC cannot occupy the status of a municipal corporation despite the powers delegated to it or the public purpose it serves.

■ The County asks us to elevate form over substance. We decline to do so. The original act provided that PAC was to be an "independent body corporate". Acts 1946, c. 22, § 8. During the years relevant to this appeal, the enabling act, as amended, provided that "neither the Commonwealth nor *any political subdivision thereof other than the commission* shall be liable" on any PAC bonds or other obligations. *Id.*, as amended, § 15 (emphasis added). We conclude from these two provisions that the General Assembly meant for PAC to occupy the status of a political subdivision.[1]

■ Looking behind labels to the relevant components of the organic act, as amended, we find that PAC possesses all the essential attributes of a municipal corporation. PAC serves a public purpose (*id.* § 21); PAC has the power "to sue and be sued, to adopt a seal . . ., and to make and execute contracts" (*id.* § 3(a)), and to acquire, hold, and dispose of its revenue and its personal and real property (*id.* §§ 3-b, 18-19); PAC has the power of eminent domain (*id.* §§ 3(d), 4); PAC can "borrow

---

[1] We reject the County's contention that local activation of the Commission precludes a finding that it is a political subdivision. It is true that when participating localities retain "substantial local control" over an entity they have created, local activation negates its status as a state agency or an "arm" of the Commonwealth. *Prendergast* v. *Park Authority*, 227 Va. 190, 194, 313 S.E.2d 399, 401 (1984). However, such an entity, although not an arm of the Commonwealth, still may be a municipal corporation (and, thus, a political subdivision) if it possesses enough of the essential attributes. *See VEPCO* v. *Hampton Red. Authority*, 217 Va. 30, 32-34, 225 S.E.2d 364, 367-68 (1976).

money and issue bonds" that are tax exempt (*id.* §§ 3(m), 15-17, 21); and PAC's corporate management is vested in a commission (*id.* §§ 2, 3, 8).

The County contends that, notwithstanding PAC's attributes, it cannot be classified as a municipal corporation because it performs proprietary rather than governmental functions. The County relies upon *VEPCO* v. *Hampton Red. Authority*, 217 Va. 30, 225 S.E.2d 364 (1976). There, we were asked to decide whether a local housing authority was a municipal corporation and, if so, whether it enjoyed sovereign immunity. Perceiving "no valid reason for declaring that an entity occupies the status of a municipal corporation for tax refund purposes and not . . . for purposes of determining its immunity from tort liability", *id.* at 34, 225 S.E.2d at 368, we held that the housing authority was a municipal corporation for purposes of considering the sovereign-immunity question. We resolved that question against the housing authority on the ground that it was performing proprietary rather than governmental functions. *Id.*

■ The County urges us to apply that test to the issue in this case. We hold that such a test is irrelevant to a determination of the taxable status of a municipal corporation, because it is constitutionally tax exempt for *all purposes* unless otherwise provided by statute.

■ The County next contends that the legislative intent of section 21, a provision added to the original act in 1964, was to condition or restrict the scope of PAC's constitutional tax exemption. In pertinent part, section 21 states:

> [A]s the operation and maintenance of any project which the authority is authorized to undertake will constitute the performance of an essential governmental function, the commission shall not be required to pay any taxes or assessments upon any facilities acquired and constructed by it under the provisions of this act . . . .

The County argues that this language "obviously evidences an intention not to exempt the land" from taxation. PAC, on the other hand, contends that "facilities" includes "any possessions or properties which serve to accomplish airport purposes".

We agree with PAC's understanding of the language. An airport's facilities necessarily include those parcels of land required

for the construction of runways and for the safe use of the runways. In addition to property contained within the area of the airport proper, the airport's facilities include outlying properties required by the federal government for the "approach" and "clear" zones as well as the "transitional" zones surrounding the runways. Absent a commitment to acquire and maintain interests in these outlying properties, PAC could not have obtained the 90 percent federal funding it received in establishing the airport. *See* 14 C.F.R. § 77.25 (1988) (establishing "Civil airport imaginary surfaces"); *id.* § 151.9 (requiring ownership or planned acquisition of runway clear zones by federal-aid recipients); *see also* Acts 1946, c. 22, § 3(l) (empowering PAC to "comply with [federal law] . . . and any rules and regulations made thereunder for the expenditure of federal monies in connection with airports, landing fields and air navigation facilities").

As we construe section 21, it was not intended to condition or restrict the scope of PAC's constitutional tax exemption, and we hold that PAC is a municipal corporation (a political subdivision) and that its tax exemption extends to all its property necessary to accomplish the public purposes for which it was created.

The parties stipulated at trial that PAC had leased a portion of the property it owned. Citing former Code § 58-14 (now, Code § 58.1-3603),[2] the County asserts that "[e]ven if the property of PAC is otherwise lawfully exempt from taxation, the leased portion lost its exempt status when it was leased."

The County's assessment of 406 acres of PAC's property fails to segregate, evaluate, and assess the 150-acre portion that was leased, and the County has not made a provisional assessment. At trial, after PAC had moved the court to enter judgment in its favor on the entire amount of taxes paid, the County offered to recall the Commissioner of the Revenue to estimate what assessment would be proper on the leased parcels. Agreeing with

---

[2] Former Code § 58-14 provided:

Whenever any building or land, or part thereof, mentioned in § 58-12, and not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town, except as is now or may hereafter be provided by law; provided, that when a part but not all of any such building or land shall be leased or otherwise be a source of revenue or profit, and the remainder of such building or land shall be used by any organization specified in § 58-12 for its purposes, only such portion thereof shall be liable to taxation as is so leased or is otherwise a source of profit or revenue.

PAC's argument that the Commissioner of the Revenue is required to follow strict statutory procedures in making assessments, the trial court entered judgment in favor of PAC and ordered the County to refund the entire amount of taxes paid.

We uphold the trial court's ruling. The County has not made a separate assessment of the leased parcels and recorded that assessment on the land books of the County as required by former Title 58, Chapter 15, of the Code (now, Title 58.1, Chapter 32).[3] Permitting the Commissioner of the Revenue to assess the property at trial would have denied PAC substantial safeguards guaranteed by former Title 58, Chapter 22, Article 2, of the Code (now, Title 58.1, Chapter 39, Article 5) respecting the correction of erroneous assessments. The County cannot ignore the procedures and safeguards mandated by statute without offending due process principles.

Finding that PAC is entitled to the exemption from taxation accorded by the Virginia Constitution and former Code § 58-12(1) and that the question concerning the taxable status of the leased parcels for the years 1981-1984 is not a justiciable controversy, we will affirm the judgment of the trial court.

*Affirmed.*

---

[3] When former Code § 58-14 was recodified as Code § 58.1-3603, effective January 1, 1985, the General Assembly added the following subsection:

 B. In assessing any building and the land it occupies pursuant to subsection A, the assessing officer shall only assess for taxation that portion of the property subject to any such lease or otherwise a source of profit or revenue and the tax shall be computed on the basis of the ratio of the space subject to any such lease or otherwise a source of profit or revenue to the entire property.