PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Koontz and Mims, S.JJ.

JOHN L. FINES

v.  Record No. 210501

RAPPAHANNOCK AREA
COMMUNITY SERVICES BOARD

OPINION BY
JUSTICE CLEO E. POWELL
SEPTEMBER 8, 2022

FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
Herbert M. Hewitt, Judge

John L. Fines, Jr. ("Fines") appeals the decision of the circuit court dismissing his claims against the Rappahannock Area Community Services Board ("RACSB") based on its determination that RACSB is a municipal corporation that is entitled to sovereign immunity.

## I.   BACKGROUND

RACSB provides services related to mental health, intellectual disabilities, and substance abuse for the City of Fredericksburg and the Counties of Spotsylvania, Stafford, Caroline, and King George.  Between 2001 and early 2004, Fines received psychological therapy through RACSB at its facilities.  At the time, Fines was between six and eight years old.  According to Fines, Scott Gordon Henry ("Henry"), a therapist employed by RACSB, molested him multiple times during individual counseling sessions.  Fines claims to have suffered significant mental and emotional injuries as a result of these repeated sexual assaults.

In 2015, Fines brought an action against Henry's estate and RACSB.  In his complaint, Fines alleged claims of battery, intentional infliction of emotional distress and negligence against Henry.  He further brought claims for negligent retention, negligent supervision, and negligence against RACSB.  Fines also asserted that RACSB was vicariously liable for Henry's actions.

RACSB demurred and filed a plea in bar asserting sovereign immunity. The circuit court sustained RACSB's demurrer with regard to Fines' negligent retention claim and granted him leave to amend his complaint. In his amended complaint, Fines reasserted the same claims. RACSB again demurred as to the simple negligence claim and filed another plea in bar on the grounds of sovereign immunity.

At an evidentiary hearing on RACSB's plea in bar, the executive director for RACSB testified that RACSB "provide[s] traditional outpatient psychiatric services." She further explained that "the ultimate management of RACSB is vested in [a] board of directors," and that RACSB is able to enter into contracts, borrow money, purchase real estate, issue bonds, and sue and be sued. The executive director also acknowledged that RACSB does not pay federal or state taxes, that it participates in the VRS state employee retirement system, and that it is subject to the Virginia Freedom of Information Act. Based on the evidence presented at the hearing, RACSB claimed it was entitled to sovereign immunity as either an "arm" of the Commonwealth or as a municipal corporation performing a governmental function.

In an opinion letter, the circuit court granted RACSB's plea in bar. Specifically, the circuit court determined that RACSB was a municipal corporation that was performing a governmental function by providing mental health treatment to Fines and, therefore, it was entitled to sovereign immunity. In reaching this conclusion, the circuit court explained that it applied the two-factor test developed by this Court in *Hampton Roads Sanitation Dist. Comm'n v. Smith*, 193 Va. 371 (1952). According to the circuit court, RACSB possessed "sufficient attributes of a municipality" and that the purpose for its determination was "more procedural

than substantive."[1]  The circuit court further noted that RACSB was "not an arm or agency of the Commonwealth" because "it does not exist pursuant to constitutional mandate and its existence is activated by local government[s] and [it is] controlled thereby."

Fines appeals.

## II.  ANALYSIS

On appeal, Fines argues that the circuit court erred in granting the plea in bar because RACSB does not possess sufficient attributes of a municipal corporation[2] and, therefore, it is not entitled to sovereign immunity.  According to Fines, RACSB is a multi-jurisdictional community services board that only exercises some limited governmental powers and it is not a municipal corporation because it lacks the fundamental characteristics of such an entity.[3]  We agree.

> "A plea in bar asserts a single issue, which, if proved, creates a bar
> to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566,
> 577 (2010).  The party asserting the plea in bar bears the burden of

[1] The circuit court did not explain which attributes of a municipality that RACSB possessed, other than to note that it lacked the power of eminent domain, nor did it explain why the purpose of its determination was more procedural than substantive.

[2] We recognize that the term "municipal corporation" is a bit of a misnomer.  By its plain language, the term implies an entity created by a city or town.  *See* Code § 1-224 (defining "[m]unicipality" as referring only to "cities and towns").  However, this Court has specifically applied a much broader definition to the term, such that it refers to "political subdivisions of the State, created for the convenient administration of such governmental powers as may be entrusted to them." *Richmond, F. & P.R. Co. v. City of Richmond*, 145 Va. 225, 238 (1926); *see also Cnty. of York v. Peninsula Airport Comm'n,* 235 Va. 477, 481 (1988) (approving the usage of the "term 'municipal corporation' interchangeably with the term 'political subdivision'").  Moreover, we have explained that the term encompasses entities that "are not municipal corporations in the strict sense of the term, but where it appears that the legislature intended that they should be so construed." *Hampton Roads Sanitation Dist. Comm'n*, 193 Va. at 375.  Thus, our use of the term here is in the "generic sense[,] to include those 'quasi-municipal corporations' which are created to perform an essentially public service." *Id.*

[3] We note that RACSB is an operating community services board, which is distinct from an administrative policy community services board or a policy-advisory community services board.  *See* Code § 37.2-100.  Accordingly, our analysis in this case is limited only to whether an operating community services board may be immune from tort liability.

3

proof. *Id.* Two possible standards of review apply, depending on whether the plea's proponent elects to meet that burden by presenting evidence or relying on the pleadings. In the former situation, in which the "parties present evidence on the plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Id.* In the latter situation, "where no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001). This approach results in functionally de novo review of the trial court's judgment.

*Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019).

In the present case, the circuit court held an evidentiary hearing, but it did not expressly state any factual findings regarding the attributes possessed by RACSB in its letter opinion. However, "[a]bsent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). As this Court's review "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling," *Perry v. Commonwealth*, 280 Va. 572, 580 (2010), the absence of any specific factual findings by the circuit court simply requires the Court to examine the evidence presented at the plea in bar hearing with the presumption that the circuit court relied on it and any inferences reasonably drawn from it. *Commonwealth v. White*, 293 Va. 411, 421 n.4 (2017). Moreover, we will review the circuit court's legal conclusions de novo. *Massenburg*, 298 Va. at 216.

## A. SOVEREIGN IMMUNITY

"[T]he doctrine of sovereign immunity is 'alive and well' in Virginia." *Messina v. Burden*, 228 Va. 301, 307 (1984). There are several means by which an entity can enjoy sovereign immunity. Undoubtedly, the Commonwealth is entitled to sovereign immunity. *Maddox v. Commonwealth*, 267 Va. 657 (2004). No action for tort may be brought against the

4

Commonwealth unless it consents, *Virginia Electric & Power Co. v. Hampton Redevelopment & Housing Authority*, 217 Va. 30, 32–33 (1976) (hereafter "*VEPCO*"), or a statute exists that grants the necessary consent, *Sayers v. Bullar*, 180 Va. 222, 225 (1942).

The General Assembly can create a separate entity as an agency of the Commonwealth to perform a function of state government and that entity will also be clothed with the Commonwealth's immunity. *VEPCO*, 217 Va. at 32 (citing *Elizabeth River Tunnel District v. Bleecher*, 202 Va. 452 (1961)). To obtain such immunity, the entity must "come into existence by state initiative" and not "local activation, [that is] optional with each locality." *Id*. at 32; *see also Cnty. of York*, 235 Va. at 481 n.1 ("It is true that when participating localities retain 'substantial local control' over an entity they have created, local activation negates its status as a state agency or an 'arm' of the Commonwealth.").

Alternatively, the General Assembly may delegate certain functions to localities, such as providing for public health. *Hampton Roads Sanitation Dist. Comm'n v. Smith*, 193 Va. at 376. A locality may then create a separate entity for the purpose of carrying out those functions. *Id.* "For certain purposes" such entities "are treated as municipal corporations." *VEPCO*, 217 Va. at 33. Municipal corporations are "not entitled to the same immunity from tort liability that is enjoyed by the Commonwealth." *Id.* at 34. Rather, as its immunity is derived from the locality, a municipal corporation's immunity is subject to the same limitations as the locality that created it. *Id.* Thus, a municipal corporation is only immune from tort liability when it fails to perform or negligently performs governmental functions; "[w]ith respect to proprietary functions, however, it is not so immune." *Id.*

5

Here, it is undisputed that RACSB is not the Commonwealth. Therefore, to enjoy immunity from tort liability, RACSB must either be an arm or agency of the Commonwealth, or it must be a municipal corporation performing a governmental function.[4]

## B. ARM OR AGENCY OF THE COMMONWEALTH

Although Fines does not take issue and, indeed, agrees with the circuit court's finding that RACSB is not an arm or agency of the Commonwealth, it is necessary for us to examine whether this alternative basis for sovereign immunity exists. RACSB relies heavily on the fact that every city and county is required to establish a community services board. *See* Code § 37.2-500 (requiring that every county and city establish a community services board). It also finds it significant that community services boards may be funded by the Virginia Department of Behavioral Health. According to RACSB, such community services boards are akin to school boards and therefore it should be treated similarly.

Our holding in *Prendergast v. Northern Va. Reg'l Park Auth.*, 227 Va. 190 (1984) is dispositive of this issue. In *Prendergast*, the Court examined whether a regional park authority was an "arm" of the state. *Id.* at 193. As the Court explained, the determinative factors are

---

[4] In its brief, RACSB takes the position that it is "nothing more than a department or agency of the local governments that created it" and, therefore, it cannot be independently sued. (EE Br. 9). However, it appears that RACSB reaches this conclusion by oversimplifying the facts of its own existence. Notably, RACSB is the product of an agreement between five localities, which means that RACSB is essentially arguing that it is an inseparable part of five distinctly separate localities. If this were actually the manner in which RACSB operated, it would clearly be untenable. Under these circumstances, RACSB simply cannot be considered a department or agency of any locality.

Our jurisprudence has recognized that RACSB and entities like it are "a peculiar class of public institutions." *Hampton Roads Sanitation Dist. Comm'n*, 193 Va. at 374. Such entities are created pursuant to Virginia law, but they are not created directly by the Commonwealth. Instead, they are created by one or more localities and are subject to varying degrees of local control. As such, we have consistently held that such entities can enjoy sovereign immunity in only one of two ways: either as an arm of the Commonwealth or as a municipal corporation. *Id.*

6

whether the enacting statute "in and of itself" created the entity and whether that entity was subject to substantial state or local control. *Id.* at 194 (citing *VEPCO*, 217 Va. at 32). Where an entity is "not directly created by the Commonwealth" but rather "is a creature of one or more localities and is essentially subject to their control," then that entity is, by definition, not an arm of the Commonwealth. *Id.*

Similar to the regional park authority in *Prendergast*, RACSB was not created by the enabling statute, Code § 37.2-500. Rather, it was created at the discretion of several localities. Moreover, contrary to RACSB's argument, the localities were not required to establish a community services board. The plain language of Code § 37.2-500 provides that cities and counties must create either a community services board, such as RACSB, or "a behavioral health authority pursuant to Chapter 6 (Code § 37.2-600 et seq.)." Any doubt regarding this issue is put to rest by the fact that RACSB's ability to act was subject to substantial local, not state, control. Thus, the circuit court did not err in its determination that RACSB is not an "arm" of the Commonwealth.

## C. MUNICIPAL CORPORATION

Having determined that RACSB is not an "arm" or "agency" of the Commonwealth, we must now consider whether RACSB possesses sufficient attributes to enjoy the status of a municipal corporation that is immune from tort liability. From our earliest cases addressing the subject we have acknowledged that,

> There is considerable lack of harmony in the decisions from various States concerning which local governmental subdivisions are included within the term "municipal corporation." Some of these entities are almost perfect in their organization and can scarcely be distinguished from municipal corporations proper; others are hardly worthy of the designation "corporation" as they are imperfectly organized and have very few powers. Between these two clearly-differentiated extremes, there are a large number

7

> of governmental agencies variously described as "political", "public", "civil", or otherwise, including drainage districts, fire districts, irrigation districts, sanitary districts, and so on *ad infinitum*.

*Hampton Roads Sanitation Dist. Comm'n*, 193 Va. at 374.

As we went on to explain, "[t]hese apparent contradictions and conflicts. . . even within the same jurisdiction, can be resolved by a concentration on two factors." *Id.* at 376. The first factor requires courts to look at "how many attributes of a municipal corporation does the entity in dispute possess." *Id.* The second factor asks, "in the light of this initial consideration, what is the particular purpose for which it is sought to determine whether or not a municipal corporation is present?" *Id.*

With regard to the first factor, this Court has identified six attributes that are "pertinent to a determination that a particular entity occupies the status of a municipal corporation." *VEPCO*, 217 Va. at 33 (citing *City of Richmond v. Richmond Metropolitan Authority*, 210 Va. 645, 647 (1970)). Those factors are:

> (1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth;
>
> (2) Creation to serve a public purpose;
>
> (3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenues, personal and real property;
>
> (4) Possession of the power of eminent domain;
>
> (5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state;
>
> (6) Management of the corporation vested in a board of directors or a commission.

*City of Richmond*, 210 Va. at 647.

It is not essential that an entity possess all of these attributes to qualify as a municipal corporation; rather, we have held that an entity may be deemed a municipal corporation "if it possesses *enough* of the essential attributes." *Cnty. of York*, 235 Va. at 481 (emphasis added). Notably, these attributes are designed to assist the finder of fact in determining whether the entity is a municipal corporation, "clothed with [the] essential powers to serve as a political subdivision of the Commonwealth," or "a mere auxiliary of a city or county government." *Hampton Roads Sanitation Dist. Comm'n*, 193 Va. at 377.

Furthermore, we look solely at the statutory language used in the enabling legislation to determine whether an entity meets the requirements of each attribute, not the actions actually taken by the entity. *See Cnty. of York*, 235 Va. at 481 (explaining that the proper focus is on the "relevant components of the organic act," i.e., the enabling legislation, to determine whether an entity contains the "essential attributes"); *Short Pump Town Ctr. Cmty. Dev. Auth. v. Hahn*, 262 Va. 733, 745 (2001) (interpreting *Cnty. of York* as requiring courts to look "solely at the statutory language used in the enabling legislation"). Notably, the essential attributes previously recognized by this Court focus on elements necessarily contained in the enabling legislation, such as the type of entity created (attribute one), the purpose of the entity (attribute two), the powers granted the entity (attributes three, four and five), and the management of the entity (attribute six). It is through this prism that we examine the attributes of RACSB.

The first attribute examines whether the entity was specifically created as a body corporate and politic and as a political subdivision of the Commonwealth. Here, we note that language designating community services boards as a body corporate or politic or as a political subdivision is conspicuously absent from the enabling legislation, Code § 37.2-500 *et seq*. It is also telling that the General Assembly defined a community services board as being a mere

9

"public body," while, at the same time, it defined a behavioral health authority as being "a public body and a body corporate and politic." Code § 37.2-100. As this Court has repeatedly explained, "when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional." *Halifax Corp. v. First Union Nat. Bank*, 262 Va. 91, 100 (2001). Thus, it is clear that the General Assembly did not intend to create community services boards as bodies corporate and politic. Accordingly, we find that RACSB fails to satisfy the requirements of the first attribute.

RACSB clearly satisfies the second attribute, however, as it was created to fulfill a public purpose. Code § 37.2-500(A) indicates that the purpose of community services boards like RACSB is to provide "mental health, developmental, and substance abuse services in the Commonwealth." It is readily apparent that such services necessarily serve a public purpose.

We find that RACSB only partially satisfies the third attribute. Here, Code § 37.2-504(A) expressly provides that community services boards have the ability to enter into contracts, Code §§ 37.2-504(A)(4) and (12), and to acquire, hold and dispose of its personal property, Code §§ 37.2-504(A)(8), (9) and (18). Similarly, the power to acquire, hold and dispose of revenues is necessarily implied by the language of Code § 37.2-504(A)(7), allowing for a reasonable fee schedule and Code §§ 37.2-501(B) and (C), which provides for "an annual audit of the total revenues and expenditures" of a community services board. However, nothing in the enabling legislation grants RACSB the power to have a common seal or to acquire, hold and dispose of real property.

More importantly, we note that the powers that RACSB does possess are severely limited in that it can only operate within parameters set by the governing bodies of its establishing

10

localities.  For example, Code § 37.2-504(A)(8) grants RACSB the power to "[a]ccept or refuse

gifts, donations, bequests, or grants of money or property from any source and utilize them *as*

*authorized by the governing body of each city or county that established it*."  (Emphasis added.)

For similar reasons, the fifth attribute is also only partially satisfied.  Although RACSB

was granted the power to borrow money, it cannot exercise that power independent of its

establishing localities.  Code § 37.2-504(A)(11) (granting community services boards the power

to "[a]pply for and accept loans *as authorized by the governing body of each city or county that*

*established it*.) (emphasis added).  Furthermore, nothing in the enabling legislation provides it

with any authority to issue bonds.

With regard to the fourth attribute, RACSB concedes that it does not possess the power of

eminent domain and nothing in the enabling legislation contradicts that concession.  Finally, it is

apparent that RACSB satisfies the sixth attribute, as the record establishes that its management is

vested in a board of directors.  *See also* Code § 37.2-501(A).  ("Every city or county or any

combination of counties and cities, before it shall come within the provisions of this chapter,

shall establish a community services board with no less than six and no more than 18 members.")

"While it is true that the more attributes of a municipal corporation an [entity] has the

more likely it is to be treated as a municipal corporation, the final decision rests on the specific

issue of each case." *Hampton Roads Sanitation Dist. Comm'n.*, 193 Va. at 377.  Here, RACSB

lacks attributes one and four entirely.  It only possesses some of the characteristics of attributes

three and five.  And even regarding those characteristics, it cannot exercise independent

authority. RACSB only fully possesses attributes two and six.  A close reading of our prior cases

indicates that the more statutory autonomy the entity possesses and exercises the more likely it is

to be declared a municipal corporation.  *See, e.g.*, *City of Richmond*, 210 Va. at 648 (holding that

11

an entity possessing all of the recognized attributes is a municipal corporation and "not a mere auxiliary of a city or county government"); *Hampton Roads Sanitation Dist. Comm'n*, 193 Va. at 377 (same). Thus, RACSB looks less like a municipal corporation and more like an auxiliary of the establishing localities.

However, that does not end our inquiry. We must next consider the second factor: "in light of th[e] initial consideration, the particular purpose for determining whether a municipal corporation is present." *VEPCO*, 217 Va. at 33.

"Generally, if the pivotal point under consideration involves a matter of procedure, there is more likelihood that a particular entity will be declared a municipal corporation, but if a point of substantive law is involved, it is less likely that the entity will be declared a municipal corporation." *Id.* The pivotal point in this case is whether RACSB is immune from tort liability. Although we have never specifically identified whether immunity from tort liability is a substantive or procedural matter, we are guided by the fact that federal courts have consistently described "the nature and scope of a claimed immunity" as a matter of "*substantive* state law." *Gray-Hopkins v. Prince George's Cnty., Maryland*, 309 F.3d 224, 231 (4th Cir. 2002) (emphasis added); *see also Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir.1998) ("[S]tate law governs the applicability of immunity to state law claims."); *In re City of Philadelphia Litig.*, 49 F.3d 945, 957 (3d Cir. 1995) ("[I]t is state law that provides the substantive doctrine of immunity."); *Napolitano v. Flynn*, 949 F.2d 617, 621 (2d Cir. 1991) (holding that state law governs the applicability of immunity claims). Such an approach is derived, in part, from "the teachings of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)," i.e., the *Erie* doctrine.[5] *Aspen*

---

[5] "*Erie* doctrine is the principle under which federal courts sitting in cases of diversity jurisdiction apply state substantive law and federal procedural law." *New Dimensions, Inc. v. Tarquini*, 286 Va. 28, 34 n.1 (2013).

12

*Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 837 (10th Cir. 2003); *see also* 13 Charles Alan Wright, et al., *Federal Practice & Procedure*, § 3524.2, p.371 (3d ed. 2008) ("Consistent with the *Erie* doctrine, a federal court sitting in diversity will honor [immunities established under state law] and dismiss the actions.").  Indeed, we note that in *Hauth v. Southeastern Tidewater Opportunity Project, Inc.*, 420 F. Supp. 171, 173 (E.D. Va. 1976), the Eastern District of Virginia specifically relied on our decisions in *VEPCO* and *Hampton Roads Sanitation Dist. Comm'n* to determine whether an entity was a municipal corporation that was immune from tort liability.  This leads the Court to the inescapable conclusion that RACSB's immunity from tort liability involves a matter of substantive law.

Given that RACSB lacks sufficient attributes of a municipal corporation, and the pivotal point of this case involves a matter of substantive law, we are of the opinion that RACSB is not a municipal corporation.[6]  Therefore, the circuit court erred in granting the plea in bar based upon RACSB being a municipal corporation.

### III. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court and remand the matter for further proceedings.

*Reversed and remanded.*

---

[6] Having determined that RACSB is not a municipal corporation, we need not consider whether it performs a governmental or proprietary function.

13