Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Millette, JJ., and Carrico, S.J.

VIRGINIA BAPTIST HOMES, INC.,
ET AL.

v.  Record No. 072042        OPINION BY JUSTICE DONALD W. LEMONS
                                        October 31, 2008
BOTETOURT COUNTY

            FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                    Michael S. Irvine, Judge

     In this appeal, we consider whether Virginia Baptist

Homes, Inc.'s ("VBH") property known as "The Glebe" in

Botetourt County is exempt from local property taxation under

Code § 58.1-3650.33.

                  I. Facts and Proceedings Below

                   A. VBH and The Glebe, Inc.

     VBH is a non-stock, not-for-profit corporation that was

organized by the Baptist General Association of Virginia in

1946 to provide a home for aged Baptists in Virginia.  In 1976

the General Assembly designated VBH as a tax-exempt

corporation under Chapter 668 of the Acts of Assembly that was

originally codified in the Virginia Code as § 58-12.45 and is

now codified as § 58.1-3650.33.  1984 Acts ch. 675.

Specifically, the General Assembly exempted VBH from personal

and real property taxes so long as the property is "used in

accordance with the purpose for which [VBH] is classified,"

pursuant to Code § 58.1-3650.33.

                              1

At the time that VBH was designated a tax-exempt corporation, its sole purpose was to establish and provide retirement communities for the elderly.  From 1946 until now VBH has never had another purpose other than operating the retirement homes for the aged.  Its Articles of Incorporation still lists its only purpose as operating its four retirement homes for the elderly.  While the language in VBH's Articles of Incorporation has been revised and altered over the years, VBH's only purpose of providing and operating retirement communities has not changed.

In 1998, The Glebe, Inc. ("TGI") was formed as a non-stock, not-for-profit corporation with VBH as its sole member.  VBH's Articles of Incorporation were amended to show TGI as one of the corporations it supports.  VBH purchased real property in Botetourt County upon which a new retirement community, called "The Glebe," was to be built.  The Glebe, like VBH's other three retirement communities, is a "continuing care retirement community" with three levels of care: independent living, assisted living, and nursing care. As a resident's health care needs change, he or she may move to a different level of care.

In order for The Glebe facility to be built, VBH loaned $1.3 million to TGI, at a 5% interest rate, to be repaid beginning in the year 2016.  VBH also loaned TGI $3.3 million,

with no interest, to be repaid starting in the year 2036.  VBH gave TGI approximately $4.5 million of benevolent funds from its other retirement communities and its ministry.  Collectively, this money represented approximately 14% of the cost of building The Glebe facility.  The remaining $55.3 million were borrowed through tax-exempt bonds.

TGI began to market The Glebe in 2003.  As of the date of trial in March 2007, TGI had spent approximately $3.6 million in advertising and marketing.  Advertisements that ran from 2003 to 2005 emphasized that The Glebe was a "resort" community or "resort-style retirement living."  The advertisements emphasized luxury amenities, such as "[v]aulted ceilings," "[r]ich hardwood cabinets," "[s]pacious rooms," and "stunning views of the Blue Ridge Mountains."

A feasibility study prepared for TGI prior to construction showed that the median sales price in TGI's primary and secondary geographic market areas in 2003 was $138,400.  In contrast, the entrance fees for The Glebe in 2003 ranged from $98,150 for a single person in a one bedroom, one bathroom apartment to $249,260 for a couple in the largest 2 bedroom, 2 bathroom cottage.  In addition to the entrance fee, residents at The Glebe must also pay monthly charges.  In 2003, these monthly charges were projected to range from $1,743 to $3,628 for residency alone.  The residents are

3

charged additional fees for ancillary charges such as telephone, Internet, housekeeping, and dining services, and may be charged additional fees if moved to assisted living or health care center units. The feasibility study showed that in TGI's primary and secondary geographic market areas, only 24.3% of people age 65 or older were income eligible to be admitted to The Glebe in 2002, and projected that only 31.5% would be income eligible in 2007.

Terms of the tax-exempt bonds issued required TGI to guarantee that 70% of its residents would have sufficient funds to pay for their care. As a result, TGI requires an applicant to fill out a confidential financial statement and go through a screening process to be admitted. Initially, applicants would not be considered unless they were calculated to be able to pay for all of their lifetime care. The calculation of a resident's ability to pay is based on his actuarial life, his holdings, and his income. Because of this requirement, only about 20% of the age-eligible population could be admitted. As of 2006, TGI changed its policy so that an applicant could be admitted if his financial forecast indicated that he would run out of assets within two years of the end of his life expectancy.

If a resident in one of VBH's three facilities in Culpeper, Newport News, or Richmond outlives his assets, VBH

4

provides direct financial assistance to that resident. From 1999 to 2005, VBH provided approximately $5.6 million in financial assistance to residents in those communities. In contrast to VBH's other facilities and with the possible exception of one resident, VBH and TGI currently offer no financial assistance or gratuitous care for those applicants who do not meet the financial requirements to be admitted to The Glebe. There are two charitable funds developed for TGI. One has a balance of approximately $51,000 and the other approximately $15,000. Those funds come from various charitable gifts, bequests, and donations; however, they are not currently being utilized.

Dr. Randall Robinson ("Dr. Robinson"), the president of VBH and TGI, testified that although TGI could not accept residents regardless of their ability to pay, TGI plans to do so in the future. Dr. Robinson testified that VBH was committed to building an endowment to help people enter The Glebe facility, and that VBH was already conducting an ongoing fundraising campaign.

There is no requirement that a resident or staff member of The Glebe adhere to any religious belief. The Glebe includes a chapel, but as one of VBH's witnesses testified "[t]hat chapel is a meditation chapel and it's for prayer and

5

meditation." However, weekly services are held by visiting clergy in The Glebe's Botetourt Room, which holds more people.

## B. Proceedings

In 2005, Botetourt County ("the County") issued real estate tax bills to VBH charging a total of $7,591.50 in real estate taxes for the tax year 2005 arising from its ownership of The Glebe.  VBH appealed the assessments to the County Commissioner of Revenue.  The County Commissioner denied the appeal, finding that The Glebe did not qualify as property used "by [VBH] exclusively for religious or benevolent purposes" under Code § 58.1-3650.33(B).  VBH requested that the Commissioner state in writing the facts and law supporting his conclusion.  The Commissioner did not reply.

The County filed a complaint in the Circuit Court of Botetourt County, seeking a declaration that VBH and TGI are subject to taxation by the County and that each lacks entitlement to tax exemption for The Glebe.  VBH answered the complaint and filed a demurrer the same day, arguing that the County was "attempting to undermine the . . . General Assembly's designation that property used by VBH is exempt from taxation" under Code § 58.1-3650.33(B).  The County responded by filing a motion for summary judgment, and VBH filed a cross-motion for summary judgment.  The trial court denied the demurrer, the County's motion for summary judgment,

and VBH's cross-motion. Following a bench trial, the trial court held that "VBH and its operations of The Glebe in Botetourt County do not satisfy the requirements necessary to be exempt from property taxes pursuant to [Code] § 58.1-3650 and [Code] § 58.1-3650.33." VBH appeals the trial court's judgment on nine assignments of error:

1. The trial court erred in ruling that VBH's property known as The Glebe is not exempt from local property taxes despite the tax exemption by designation granted by the General Assembly in Code § 58.1-3650.33.

2. The trial court erred in holding that The Glebe property is not used exclusively for religious or benevolent purposes.

3. The trial court erred in ruling that the principle of strict construction prevented it from applying the exemption found in Code § 58.1-3650.33(B).

4. The trial court erred in holding that the dominant purpose of the property known as The Glebe does not immediately and directly promote VBH's religious and benevolent purposes.

5. The trial court erred in holding that by amending its articles of incorporation to reflect its operations in a parent-subsidiary structure, VBH fundamentally changed its purpose and no longer serves the benevolent purposes that led the General Assembly to grant the exemption to VBH's property.

6. The trial court erred in not granting VBH's summary judgment motion.

7. The trial court erred in not granting VBH's motion to strike.

8. The trial court erred in holding that VBH does not subsidize the cost of care at The Glebe.

7

9. The trial court erred in rejecting the evidence regarding VBH's commitments to providing direct financial assistance as The Glebe matures.

## II. Analysis

This Court reviews questions of statutory interpretation utilizing a de novo standard of review. Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv., 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006). Furthermore, we have held that the issue of property tax exemption is a mixed question of fact and law and thereby must be reviewed de novo, giving deference to the trial court's factual findings. Smyth County Community Hosp. v. Town of Marion, 259 Va. 328, 336, 527 S.E.2d 401, 405 (2000); The Daily Press, Inc. v. City of Newport News, 265 Va. 304, 309, 576 S.E.2d 430, 432-33 (2003).

The Constitution of Virginia provides in pertinent part:

Article X
Taxation and Finance

. . . .

§ 6. Exempt property. – (a) Except as otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:

. . . .

(6) Property used by its owner for religious, charitable, patriotic, historical, benevolent, cultural, or public park and playground purposes, as may be provided by classification or designation by an ordinance adopted by the local governing body and subject

8

to such restrictions and conditions as provided by general law.

Va. Const. art. X, § 6. Pursuant to this constitutional authority, the General Assembly provided for tax-exempt property designations.

> A. The real and personal property of an organization designated by a section within this article and used by such organization exclusively for a religious, charitable, patriotic, historical, benevolent, cultural or public park and playground purpose as set forth in Article X, Section 6(a)(6) of the Constitution of Virginia, the particular purpose for which such organization is classified being specifically set forth within each section, shall be exempt from taxation so long as such organization is operated not for profit and the property so exempt is used in accordance with the purpose for which the organization is classified. In addition, such exemption may be revoked in accordance with the provisions of § 58.1-3605.
>
> B. Exemptions of property from taxation under this article shall be strictly construed in accordance with the provisions of Article X, Section 6(f) of the Constitution of Virginia. (1984, c. 675; 1995, c. 346.)

Code § 58.1-3650.

Pursuant to this statutory scheme, the General Assembly has provided specific designation of tax exemption to numerous organizations. The designation at issue in this case was granted to VBH, codified at § 58.1-3650.33, and provides as follows:

> A. The Virginia Baptist Homes, Inc., a nonstock, nonprofit organization, is hereby

9

classified and designated as a religious and benevolent organization within the context of Section 6(a)(6) of Article X of the Constitution of Virginia.

B. Property owned by the Virginia Baptist Homes, Inc. and used by it exclusively for religious or benevolent purposes on a nonprofit basis, as set forth in subsection A. of this section, is hereby determined to be exempt from taxation, State and local, including inheritance taxes.

As we noted in Westminster-Canterbury of Hampton Roads v. City of Virginia Beach, 238 Va. 493, 498, 385 S.E.2d 561, 564 (1989), the General Assembly has also provided for tax exemption by classification. See Code § 58.1-3606 and Code § 58.1-3609. We noted that, "the General Assembly deliberately created this classification-designation dichotomy in the field of tax exemption, reserving unto itself the authority to grant exemptions where entitlement under the stricter terms of the classification statutes might be doubtful." Id. at 501-02, 385 S.E.2d at 566.

The trial court held that under Code § 58.1-3650.33(B) The Glebe was not being used exclusively for religious or benevolent purposes. We disagree with the trial court's analysis, statutory construction, and ultimate determination that The Glebe is not tax-exempt property.

The General Assembly provided for VBH's tax exemption by designation pursuant to Code § 58.1-3650.33. When

10

interpreting a statute, courts "are required to 'ascertain and give effect to the intention of the legislature,' which is usually self-evident from the statutory language." Virginia Polytechnic Inst., 271 Va. at 309, 626 S.E.2d at 438, citing Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003). Furthermore, "[w]hen the language in a statute is clear and unambiguous, [this Court] appl[ies] the statute according to its plain language." Virginia Polytechnic Inst., 271 Va. at 309, 626 S.E.2d at 438.

When VBH was granted the tax-exempt designation by the General Assembly, VBH's sole purpose was to operate retirement homes for the elderly. Knowing that VBH's only purpose was to provide and manage retirement facilities for the aged, the General Assembly designated VHB as a "religious and benevolent" organization that was tax-exempt. See Code § 58.1-3650.33. Therefore, because the General Assembly designated VBH as a "religious and benevolent" organization, it follows that the General Assembly considered VBH's operation of retirement communities for the elderly, its only purpose, to be both religious and benevolent.

In 1976 when the General Assembly granted VBH tax-exempt status by designation, its articles of incorporation provided in part that VBH could:

11

> [S]olicit sufficient funds, establish and maintain an institution where aged, indigent and infirm men and women may be provided with a comfortable home gratuitously or upon such other conditions as may be prescribed by the management from time to time.

Since 1976 there have been some changes in the language of various corporate documents. VBH's current by-laws state that it "provides quality care in a religious setting" and "seeks to accomplish its charitable and religious purposes through four affiliated non-profit corporations" which include The Glebe. The articles of incorporation of The Glebe state, in pertinent part, that its purpose "is to provide elderly persons with housing facilities and services specially designed to meet their physical, social and psychological needs, and to promote their health, security, happiness and usefulness in longer living." The Glebe's by-laws provide in pertinent part:

> The objectives for which this Corporation are operated are: . . . (b) to provide for the care and comfort of the residents in whatever manner is required in order to provide a spiritual environment and proper living conditions; (c) to provide care either free of charge or for compensation; . . . Sources of funding shall include fees from residents, denominational allocations, church and individual donations, bequests and funds distributed by Virginia Baptist Homes Foundation, Inc., a Virginia non-stock corporation, in accordance with its stated purposes. Benevolent funds received from individuals and denominational sources shall be used to provide benevolent care for residents with demonstrated financial need.

The county cites City of Richmond v. Virginia United Methodist Homes, 257 Va. 146, 509 S.E.2d 504 (1999) in support of its argument that a change in purpose in the articles of incorporation supports a denial of tax-exempt status. In Richmond, United Methodist Homes had initially cited as a corporate purpose: to provide "a home or homes for the aged and infirm and needy persons." Id. at 150, 509 S.E.2d at 505. A subsequent change to the articles deleted the reference to "the aged and infirm and needy persons," and replaced it with the term "aging persons." Id. at 151, 509 S.E.2d at 505. We held that this new language was a "significant change" requiring further examination to determine if United Methodist Homes property still qualified for tax-exempt status. Id. at 158, 509 S.E.2d at 509. We held that these changed circumstances caused the subject property to no longer qualify as an "asylum" under the classification statute relied upon by United Methodist Homes. Id. at 159, 509 S.E.2d at 509; § 58.1-3606(5). It is significant that the Richmond case was a classification case rather than a designation case; because we noted that upon the same facts presented, "Nothing in this opinion should be interpreted as restricting Methodist Homes from obtaining a legislative exemption from local taxes by

13

designation under Code § 58.1-3607." Id. at 159 n.5., 509 S.E.2d at 509 n.5.

Of course this distinction between exemption by classification and exemption by designation was a key factor in the Westminster-Canterbury case. We held that Westminster-Canterbury did not satisfy the criteria for exemption by classification irrespective of the established fact that identical homes operated by Westminster-Canterbury had tax exemptions by designation. Westminster-Canterbury, 238 Va. at 501, 385 S.E.2d at 566. We stated, "It does not follow, however, that the General Assembly's action with respect to the three other Westminster-Canterbury facilities, which are admittedly identical to the Virginia Beach facility, is of doubtful validity. Id. The General Assembly does not labor under the stricture imposed upon tax authorities by the classification statutes. Id.

> In this appeal, as we have done in the past, we
>
> apply the "dominant purpose test" in cases involving issues of property taxation exemption. That test, generally speaking, is whether the property in question promotes the purpose of the institution seeking the tax exemption. The test is applied in two different contexts; one in which the qualifying status of the *property owner* is challenged; the other in which the qualifying status of the *property* is challenged.

14

Community Hosp., 259 Va. at 334, 527 S.E.2d at 404. In this case only the property in question is challenged.

While there may have been some changes made to the corporate structure of VBH since the designation in order to limit tort liability, adjust to changes in federal tax law, and allow for greater flexibility when making capital improvements, the record, including documentation and testimony, reflects that its dominant purposes and that of The Glebe have not changed since the General Assembly granted its tax-exempt designation.[*]

Accordingly, the only question the trial court needed to analyze under Code § 58.1-3650.33(B) was whether The Glebe is property owned and "used by it exclusively for religious or benevolent purposes on a nonprofit basis." The General Assembly already determined that operation of retirement communities for the elderly by VBH qualified as a religious and benevolent purpose. What remained to be decided by the trial court is whether The Glebe was such a property.

In interpreting Code § 58.1-3650.33, the Court must apply a rule of strict construction "in accordance with the provisions of Article X, Section 6(f) of the Constitution of Virginia." Code § 58.1-3650(B).

---

[*] The General Assembly may revoke VBH's tax-exempt designation pursuant to Code § 58.1-3605.

15

> The general rule is that an exemption from taxation is the exception and provisions exempting property from taxation must be strictly construed. The strict construction of this statute means that entitlement to exemptions must "appear clearly from the statutory provisions" relied upon. If there is any doubt concerning the exemption, the doubt must be resolved against the party claiming the exemption.

Community Hosp., 259 Va. at 333, 527 S.E.2d at 403 (quoting Westminster-Canterbury, 238 Va. at 501, 385 S.E.2d at 565).

The trial court examined evidence of the operation of The Glebe including: admitting residents regardless of religious beliefs; having no requirement that staff practice or adhere to any specific religion; having a chapel but using it for independent meditation/prayer and not using it for specific religious services; and offering only religious services from visiting clergy of various backgrounds. While this rigorous examination may be necessary in a case involving tax exemption by classification, it is not the correct inquiry in a case involving tax exemption by designation.

The plain meaning of Code § 58.1-3650.33(A), strictly construed, demonstrates that the General Assembly in designating VBH as a "religious and benevolent organization" considered operating retirement homes for the elderly to qualify as a religious purpose. Therefore, the only question

16

to be answered is whether The Glebe, in fact, operates a retirement community for the elderly on a nonprofit basis.

There is no evidence in this record that The Glebe provides any service other than operating a retirement community for the elderly.  There is no evidence of The Glebe performing any other function on the premises of The Glebe such as the operation of some unrelated commercial venture. The County argues on appeal that The Glebe does not operate on a nonprofit basis as required by Code § 58.1-3650.  The trial court made no finding on this issue and the County does not assign cross-error to the lack of a finding.  Consequently, the matter is not before us.  Rule 5:25.

Code § 58.1-3650.33(B) requires that property owned by VBH be used "exclusively for religious or benevolent purposes."  (Emphasis added).  Giving deference to the legislative designation, we hold that The Glebe is used exclusively for a religious purpose.  Accordingly, we need not address whether The Glebe is also used for a benevolent purpose.  The resolution of this case based upon deference to legislative designation renders it unnecessary to consider any remaining assignments of error.

### III. Conclusion

The trial court erred in holding that VBH and The Glebe are not exempt from taxation under the provisions of Code

17

§ 58.1-3650.33.  We will reverse the judgment of the trial court and enter final judgment for VBH and The Glebe.

<u>Reversed and final judgment</u>.

JUSTICE KOONTZ, with whom CHIEF JUSTICE HASSELL joins, dissenting.

I respectfully dissent.  It is undisputed that since 1976 the General Assembly has provided by designation a tax exemption to Virginia Baptist Homes, Inc. as a religious and benevolent organization.  Code § 58.1-3650.33(A).  This exemption, however, is expressly qualified and limited by the plain provisions of Code § 58.1-3650.33(B), which provides that:

> "<u>Property</u> owned by the Virginia Baptist Homes, Inc. and <u>used by it exclusively for religious or benevolent purposes on a nonprofit basis</u>, as set forth in subsection A. of this section, is hereby determined to be exempt from taxation, State and local, including inheritance taxes."

(Emphasis added).  At issue here is whether a particular property in Botetourt County, known as "The Glebe," used for a "continuing care retirement community" and owned by Virginia Baptist Homes qualifies for the tax exemption provided in this subsection.[1]

---

[1] Although the retirement community is operated under the corporate structure of "The Glebe, Inc.," for purposes of this appeal, it is not contested that the property is owned by Virginia Baptist Homes.

18

In my view, the majority incorrectly construes the 1976 legislative designation under Code § 58.1-3650.33(A) that Virginia Baptist Homes is a "religious and benevolent organization" entitled to a tax exemption as also serving to establish "that the General Assembly considered [Virginia Baptist Homes'] operation of retirement communities for the elderly, its only purpose, to be both religious and benevolent." If this were so, then it would not have been necessary for the General Assembly to include in Code § 58.1-3650.33(B) the qualification that the exemption would apply only to the property of Virginia Baptist Homes "used by it exclusively for religious or benevolent purposes." See Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 483, 666 S.E.2d 361, 370 (2008) (quoting Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998)) (" '[E]very part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary.' ").

To the contrary, this qualification makes clear that the General Assembly understood that not every property of a religious and benevolent organization would necessarily be used for a religious or benevolent purpose. Therefore, the majority's conclusion that "the only question to be answered

19

[in this case] is whether [T]he Glebe, in fact, operates a retirement community for the elderly on a nonprofit basis" simply fails to give full effect to the legislative intent of Code § 58.1-3650.33(B) as plainly written.  Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv., 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006) ("When the language in a statute is clear and unambiguous, we apply the statute according to its plain language."); see also HCA Health Servs. v. Levin, 260 Va. 215, 220, 530 S.E.2d 417, 419-20 (2000).

Well-established principles provide the foundation for the analysis in tax exemption cases.  The general policy in this Commonwealth is to tax all property.  The General Assembly, however, may establish tax exemptions and impose restrictions or conditions upon the exemptions.  When exemptions are established they are to be strictly construed so that exemption from taxation is the exception, thus placing the burden upon the taxpayer to establish that it comes within the terms of the exemption.  Mariner's Museum v. City of Newport News, 255 Va. 40, 44, 495 S.E.2d 251, 253 (1998). Under our present Constitution, which became effective July 1, 1971, the rule of strict construction is applicable to the exemption in question in this case and under that rule " 'where there is any doubt [that the exemption applies to the

20

particular property known as The Glebe], the doubt is resolved against the one claiming exemption.' " Westminster-Canterbury v. City of Virginia Beach, 238 Va. 493, 501, 385 S.E.2d 561, 565 (1989) (quoting Golden Skillet Corp. v. Commonwealth, 214 Va. 276, 278, 199 S.E.2d 511, 513 (1973)).  In this context, we have explained that the taxpayer's "entitlement to exemption [from taxation] must appear clearly from the statutory provisions upon which it relies."  Id.

In light of these principles, the issue to be resolved in this case is whether the property in question is used "exclusively for religious or benevolent purposes."  There is no real dispute that the property is operated on a non-profit basis.

Concluding that the word "benevolent" should receive a reasonable interpretation to give effect to its accepted meaning, we have adopted a definition that defines benevolent to mean:  "Philanthropic; humane, having a desire or purpose to do good to men; intended for conferring of benefits, rather for gain or profit."  Manassas Lodge No. 1380, Loyal Order of Moose v. Prince William County, 218 Va. 220, 224, 237 S.E.2d 102, 105 (1977).  Clearly, the provision of free or subsidized housing and care to the elderly would qualify as a benevolent purpose under Code § 58.1-3650.33(B).  However, in the present case the trial court factually determined that "all residents

21

at [T]he Glebe pay 100 percent of the cost of their care" and "the property is not used to house the indigent." The trial court's finding in this regard is amply supported by the record. Indeed, the use of the actuarial requirements to limit admission to The Glebe effectively demonstrates that Virginia Baptist Homes does not operate the property to confer a gratuitous benefit to the needy. Accordingly, The Glebe is not used for a benevolent purpose so as to promote the essentially charitable purpose of Virginia Baptist Homes as stated in its Articles of Incorporation in 1976, which state the purpose to be: "To solicit sufficient funds, establish and maintain an institution where aged, indigent and infirm men and women may be provided with a comfortable home gratuitously or upon such other conditions as may be prescribed by the management from time to time."

The focus of the analysis then turns to the critical issue whether The Glebe is used for a religious purpose as contemplated by Code § 58.1-3650.33(B). The trial court determined that the use of this property did not qualify as promoting a religious purpose essentially upon finding that The Glebe is open to all potential residents "regardless of religious beliefs or lack thereof," the staff is not required to practice or adhere to any specific religion, and the chapel on the property is not used for specific religious services,

22

but rather for independent meditation or prayer.  <u>Cf.</u>

<u>Evangelical Lutheran Good Samaritan Soc'y v. Buffalo County</u>

<u>Bd. of Equalization</u>, 500 N.W.2d 520, 524 (Neb. 1993) (holding

that encouraging tenants to participate in religious services

did not qualify an "independent living" apartment complex for

a religious purpose tax exemption).  These factual findings

are supported by the record.  Moreover, nothing in the record

in this case would support a conclusion that Virginia Baptist

Homes' exclusive, or even primary, purpose for developing and

using The Glebe was to provide for the spiritual needs of the

prospective residents or to provide housing and care to

deserving individuals in fulfillment of a faith-based mission.

Accordingly, in the final analysis, the issue becomes

whether the provision of housing for the elderly in and of

itself qualifies as a religious purpose as contemplated by

Code § 58.1-3650.33(B) in the particular use of The Glebe by

Virginia Baptist Homes.  Even if it is assumed that the

provision of housing for the elderly may be motivated by a

religious purpose, it is self-evident that not all properties

which provide care for the elderly are used for a religious

purpose.[2]  In this particular case, as demonstrated above, The

---

[2] See <u>Yakima First Baptist Homes, Inc. v. Gray</u>, 510 P.2d
243, 247 (Wash. 1973)(holding that "care for the aged . . .
cannot be said [to be] a religious purpose within the commonly
accepted definitions of the word 'religious'").

23

Glebe is essentially operated as a business enterprise in which the residents purchase their desired housing and care. Undoubtedly, The Glebe functions to provide a worthwhile and beneficial means by which elderly individuals may secure housing, lifetime care and, indeed, the benefit of the association with their peers. Nevertheless, it simply cannot reasonably be said that such involves a religious purpose.

For these reasons, I would affirm the judgment of the trial court finding that The Glebe is not used exclusively for religious or benevolent purposes and, thus, is not subject to the tax exemption granted to Virginia Baptist Homes in 1976.