COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Callins
Argued by videoconference


CHRISTIAN SCHOLARS NETWORK, INC., d/b/a
 BRADLEY STUDY CENTER

OPINION BY
v.      Record No. 0058-25-3        JUDGE DOMINIQUE A. CALLINS
                                     JANUARY 27, 2026

MONTGOMERY COUNTY, VIRGINIA, ET AL.


FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Michael S. Irvine, Judge Designate

Melvin E. Williams (Meghan A. Strickler; Williams & Strickler,
PLC, on briefs), for appellant.

Scott A. Stephenson (Monica T. Monday; Kathleen L. Wright;
Martin McMahon; Lawrence S. Spencer, Jr.; Gentry Locke, on
brief), for appellees.


Christian Scholars Network (CSN) appeals the trial court's judgment denying its claim

for the review of its tax liability for real property it owns in Blacksburg, Virginia. On appeal,

CSN argues the trial court erred in (1) holding CSN's property is not tax-exempt under Code

§§ 58.1-3606, -3609, -3617, (2) declining to apportion CSN's tax liability under Code

§ 58.1-3603, and (3) excluding CSN's expert witness. Because we hold CSN fails to satisfy the

exclusive-use requirements of the exemptions it claims, its tax liability cannot be apportioned,

and excluding CSN's expert witness was, at most, harmless error, we affirm.

BACKGROUND

CSN is a Virginia non-stock corporation approved by the Internal Revenue Service as a

501(c)(3) nonprofit charitable organization doing business as the "Bradley Study Center" in

Blacksburg, Virginia. Formed in 2011, CSN is operated "exclusively for charitable and/or

educational purposes." CSN represents it "exists to engage Virginia Tech students, scholars, and community members in the rich intellectual traditions of the Christian faith and explore its implications for every aspect of life." It offers opportunities for students and faculty to (1) connect tenets of Christian faith to their studies, work, and lives; (2) network with like-minded individuals; and (3) pursue "knowledge and truth on the important questions of life." As Reverend Michael Weaver, CSN's director, put it, CSN's purpose is to "help students, faculty and community members, . . . to love God with all their heart, soul, mind and strength, but, in particular, . . . with all their mind."

In March 2019, CSN purchased a two-unit office condominium located at 104 Faculty Street in Blacksburg (the Property). The Property featured four spaces, exclusive of bathrooms. The first floor housed a common room, a library with 2 armchairs and a couch, and a classroom with a 12-person table and accompanying chairs. The second floor was a loft with a full kitchen, tables, chairs, a couch, two armchairs, and a built-in bookcase. The Property did not feature a designated sanctuary, altar, or worship space.

CSN used the Property for its limited programming, including for discussion groups, faculty prayer sessions, and its signature "Bradley Fellows Program." CSN's programming emphasized "holistic formation" through reading groups and prayer, hospitality and outreach, and "engaging the university as the university." Discussion groups and short courses offered each semester were held in every space within the Property. The loft also hosted the Fellows Program on Monday nights and was used either by CSN or "another campus ministry at [Virginia] Tech" on "every night of the week." CSN did not, however, hold "religious worship services . . . presided over by ordained clergy." Nor was the facility used for the administration of religious sacraments or the performance of rites or obligations associated with holy days.

And, to the opposite end, CSN regularly hosted "Pizza with the Profs" at the Property, an event Reverend Weaver conceded was not a "religious worship service."

Student organizations affiliated with Virginia Tech and local churches also reserved and used the Property for events. Kleros Campus Ministries—a college-focused ministry of a local elder-run church—held weekly dinners "for a period of time," featuring prayer before the dinner and an "open time of fellowship for . . . students to grow in relationship with one another." InterVarsity, a separate national campus ministry organization, held two events at the Property in 2023. An on-campus conglomerate of Virginia Tech's Christian organizations known as "VT1" held 24-hour prayer events at the Property in 2022 and 2023, and a "pancake fellowship mixer" in late 2022. At the same time, Valor—a contextualized campus ministry within Campus Crusade for Christ International that ministers to members of the corps of cadets at Virginia Tech—had hosted Bible studies, discussion groups, and worship events weekly at the Property since CSN acquired it. A local nondenominational church used the Property as its sanctuary on Sundays from August 2022 to September 2023, gathering at the Property for prayer, worship, and a sermon. The same church also used the Property for Wednesday-night prayer meetings, children's ministry, counseling sessions, and exorcisms. None of these organizations were required to pay for their use of the Property, even though they may have voluntarily made donations to support CSN's mission.

Additionally, a for-profit business, Abundant Life Christian Counseling, used the Property to provide mental health services to clients. Reverend Weaver observed that Abundant Life used the Property during CSN's normal operating hours, while CSN's regular staff and other organizations were present. Avrial Mendoza, a mental health provider with Abundant Life, offered services out of the Property and charged "$100 per partial hour and up." Abundant Life used the Property for five hours each week, suggesting revenue of $2,000 or more per month.

Like other organizations, Abundant Life was not required to pay CSN for the use of the Property, although CSN did initially ask Mendoza to pay for incidental expenses, like toiletries. Reverend Weaver expressed that he "struggled" with the decision to permit Abundant Life's use of the Property since he viewed it as "a little bit of a mission creep for" CSN. Reverend Weaver distanced the work of CSN from that of Abundant Life, noting that, unlike Abundant Life, CSN's "mission [wa]s not to provide mental health services to college kids."

Meanwhile, shortly after CSN's purchase of the Property, Montgomery County assessed property taxes on the Property for $3,489.69. CSN challenged the assessment. CSN's challenge was forwarded to the Board of Supervisors, which promptly resolved to deny the relief sought. CSN then appealed to the County's Commissioner of Revenue under Code § 58.1-3980. The Commissioner denied CSN's request.

In June 2020, CSN sued the County, the Town of Blacksburg, and others (collectively, the County),[1] seeking a review of the County's tax assessment under Code § 58.1-3984. CSN asked the trial court to hold that the Property was exempt from taxation under, among other provisions, Code §§ 58.1-3606(A)(2), (5), -3609, -3617. CSN pleaded the Property was owned by a "church[] or religious bod[y]" and "exclusively occupied or used for religious worship." Code § 58.1-3606(A)(2). Similarly, CSN pleaded that it was an exclusively nonprofit, charitable "religious association" within the meaning of the statute and that the Property "belong[ed] to and [was] actually and exclusively occupied and used by" the association. Code § 58.1-3606(A)(5). And CSN pleaded that it was a "church, religious association or religious denomination" and that

---

[1] CSN originally sued the Commissioner, the Board of Supervisors, the Town Council, and the County Treasurer in addition to the County and the Town. By agreed order entered on September 15, 2023, however, the parties "agreed that the County . . . and the Town . . . [were] the only defendants required," and the Commissioner, Board, Council, and Treasurer were dismissed from the action.

the Property was "used exclusively for charitable, religious or educational purposes." Code §§ 58.1-3609, -3617.

Before trial, the County successfully moved to exclude the testimony of CSN's designated expert witness, Gerald R. McDermott. McDermott was designated as an expert in "religious worship" and was prepared to testify that "a Christian counselor who does her counseling has [sic] a form of service to God or fellow man would see that as religious worship and it could be construed as religious worship." The County argued McDermott's testimony as to what constituted "religious worship" would have been irrelevant, would only speak to a question of law, and would be "at odds with the strict construction" required by law. CSN responded that "religious worship" was an ambiguous term requiring McDermott's interpretative aid. The trial court granted the County's motion "for the reasons stated on the record at the hearing," although no transcript of the described hearing was included in the record.

CSN moved the trial court to revisit its ruling on the exclusion of McDermott's testimony at trial. It so moved after observing that the County was "making a great issue of what constitutes worship" when cross-examining CSN's witnesses. The County responded that its questions concerned the formality required to qualify as a "church[] or religious bod[y]" under Code § 58.1-3606(A)(2), a "religious association" under Code § 58.1-3606(A)(5), or a "church, religious association or religious denomination" under Code § 58.1-3617. The County did not "hang[] [its] hat on what worship is," but rather on the extent of formality of worship required by the Code. The trial court stood by its original ruling excluding McDermott's testimony, reasoning that it did not "need an expert to come in and tell [it] that people saying prayers" or "singing hymns and reciting Psalms and studying the Bible" constituted worship.

At the close of CSN's case-in-chief, the County moved to strike its evidence. The trial court took the County's motion under advisement as it related to CSN's claims under Code

§§ 58.1-3606(A)(2), (5), -3609, -3617, and the County rested without presenting evidence.[2] The trial court permitted the parties to file post-trial memoranda before reconvening for closing arguments. CSN was required to file its memorandum within 21 days from the last day of trial, with the County's responsive brief 14 days thereafter, and a reply brief from CSN 7 days following.[3]

The parties submitted their post-trial briefs as directed. On brief, the parties primarily reiterated their arguments from trial. CSN argued, among other things, that the Property should be exempt from taxation under Code §§ 58.1-3606(A)(2), (5), -3609, -3617. The County responded that the Property should not be exempt since CSN does not qualify as a church, religious body, religious denomination, or religious association, and since the Property does not meet the exclusive-use requirements of the exemptions. In its reply to the County, CSN argued for the first time that Code § 58.1-3603 should apportion CSN's tax liability on the Property if Abundant Life's use of the Property were to be found disqualifying.

The trial court denied CSN's claims for exemption. It held CSN's claim to the Code §§ 58.1-3609, -3617 exemption failed since it interpreted the term "religious association" as used in that exemption to be a "synonym or near-synonym for 'church'" and concluded CSN was not a church. For the Code § 58.1-3606(A)(2) exemption, the trial court held that (1) CSN could not qualify as a "religious body," since it interpreted that term as synonymous with "church," and (2) the Property was not exclusively occupied or used for religious worship since Abundant Life's professional counseling business constituted "an activity which cannot reasonably (let

---

[2] The trial court granted the County's motion to strike as to a claim for exemption under Code § 58.1-3606(A)(7). CSN does not challenge this ruling on appeal.

[3] Notably, when the trial court entered an order adjusting the briefing schedule to accommodate a change in the date for hearing closing arguments, it only listed dates for CSN's initial brief and the County's responsive brief.

alone strictly) be characterized as religious worship." As for the Code § 58.1-3606(A)(5) exemption, the trial court held that the "extensive third party use" of the Property permitted by CSN was fatal to its claim. It also held that, regardless, CSN did not operate as a charity since it did not provide "services to the sick, the aged, or the poor" or "erect[] or maintain[] public works" or otherwise "lessen[] the government's burden." This appeal followed.

ANALYSIS

CSN's appeal raises questions of tax exemption, statutory interpretation, and the exclusion of expert testimony. Issues of property tax exemption present mixed questions of fact and law. *Va. Baptist Homes, Inc. v. Botetourt Cnty.*, 276 Va. 656, 663 (2008). We review questions of law, including those relating to statutory interpretation, de novo. *Id.* But we defer "to the trial court's factual findings in order to review the court's application of the law to those facts." *Daily Press v. City of Newport News*, 265 Va. 304, 309 (2003). Meanwhile, we review a trial court's decision to exclude expert testimony for an abuse of discretion. *John Crane, Inc. v. Jones*, 274 Va. 581, 591 (2007). The abuse of discretion standard requires this Court to consider the "range of choice" available to the trial court, leaving its decision undisturbed as long as it "stay[ed] within that range and [was] not influenced by any mistake of law." *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)). A trial court abuses its discretion by failing to consider a relevant factor entitled to significant weight, considering and giving an improper or irrelevant factor significant weight, or committing a clear error of judgment despite considering all proper factors. *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013). We consider each of CSN's arguments in turn.

I. Tax Exemptions[4]

CSN invokes the exemptions codified at Code §§ 58.1-3606, -3609, -3617 to avoid its tax

liability on the Property. Relevant here, it argues that the Property (1) is used "exclusively for

charitable, religious or educational purposes," as required by Code § 58.1-3617, (2) is used

"exclusively . . . for religious worship," as required by Code § 58.1-3606(A)(2), and

(3) "belong[s] to and [is] actually and exclusively occupied and used by" religious associations

"conducted not for profit but exclusively as charities," as required by Code § 58.1-3606(A)(5).

We disagree and hold that CSN fails to meet the exclusivity requirements of these exemptions.

Property in Virginia is taxable by default, unless exempted. Va. Const. art. X, §§ 1, 6.

Virginia's Constitution specifically exempts from taxation "[r]eal estate and personal property

owned and exclusively occupied or used by churches or religious bodies for religious worship or

for the residences of their ministers." Va. Const. art. X, § 6(a)(2); *see also Emmanuel Worship*

*Ctr. v. City of Petersburg*, 80 Va. App. 100, 110 (2024) (describing this exemption as a "baseline

---

[4] The County argues CSN failed to preserve its arguments by failing to obtain rulings as to (1) the exclusive use requirements of Code § 58.1-3617, (2) its entitlement to the Code § 58.1-3606(A)(2) exemption in light of Abundant Life's use of the Property, and (3) its similarity to the YMCA for purposes of the Code § 58.1-3606(A)(5) exemption.

Rule 5A:18 demands that CSN demonstrate it "'obtain[ed] a clear ruling from the trial court' on an issue [it] wishes to raise on appeal." *McDaniel v. Commonwealth*, 73 Va. App. 299, 313 (2021) (quoting *Young v. Commonwealth*, 70 Va. App. 646, 657 (2019)). But Code § 8.01-384(A) liberalizes the strictures of preservation, providing that "[a]rguments made at trial via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, . . . be deemed preserved therein for assertion on appeal." These challenges were all briefed and argued during and after trial, which is enough for preservation. Code § 8.01-384(A). And though we cannot review an issue not ruled upon by the trial court, *Bailey v. Commonwealth*, 73 Va. App. 250, 264 (2021), we construe the trial court's refusal to rule on these issues as an implicit rejection of CSN's arguments, *see Mayr v. Osborne*, 293 Va. 74, 79 n.3 (2017) (noting that a trial court's award of damages following motions to strike by the defendant "necessarily constituted an implicit denial of the motions to strike").

exemption by classification for religious-use properties"). But, prior to 2002,[5] it also authorized the General Assembly to exempt "[p]roperty used by its owner for religious, charitable, . . . [or] benevolent, . . . purposes, as may be provided by classification or designation" by general law. Va. Const. art. X, § 6(a)(6). The General Assembly exercised its authority to enact new exemptions, including those at issue here. For example, Code § 58.1-3606 invokes the General Assembly's authority under Article X, Section 6(a)(6) to exempt eight classes of real and personal property from taxation. Code § 58.1-3609 similarly invokes Article X, Section 6(a)(6) of our Constitution to provide for exemptions by classification of property used by nonprofit organizations for certain purposes as described in Code §§ 58.1-3610 to -3621. Among the classes exempted by Code § 58.1-3609 is certain property used by "church[es], religious association[s] or religious denomination[s]," as described in Code § 58.1-3617.

Strict construction applies to property exempt from taxation after July 1, 1971. Va. Const. art. X, § 6(f); *Emmanuel Worship*, 80 Va. App. at 109. Thus, construing tax exemption statutes requires the claimed entitlement to "appear clearly from the [relevant] statutory provisions." *Smyth Cnty. Cmty. Hosp. v. Town of Marion*, 259 Va. 328, 333 (2000) (quoting *Westminster-Canterbury of Hampton Rds. v. City of Va. Beach*, 238 Va. 493, 501 (1989)). And doubts as to the applicability of an exemption are resolved against the taxpayer-claimant. *Mariner's Museum v. City of Newport News*, 255 Va. 40, 44 (1998). Put simply, "[w]hen a tax statute is susceptible to two constructions, one granting an exemption and the other denying it, the latter construction is adopted." *LZM, Inc. v. Va. Dep't of Tax'n*, 269 Va. 105, 110 (2005).

---

[5] Whether the General Assembly retains this authority post-2002 is an open question not squarely before the Court. Therefore, we do not address it.

Established principles govern this Court's interpretation of a statute. *See Va. Baptist Homes*, 276 Va. at 665 (applying established principles in interpreting a statute providing for tax exemption by designation). We are required to "ascertain and give effect to" legislative intent based on the plain language of a statute. *Id.* (quoting *Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.*, 271 Va. 304, 309 (2006)). The plain language of a statute controls "unless a literal interpretation of the language would result in a manifest absurdity." *Muse Constr. Grp., Inc. v. Commonwealth Bd. for Contractors*, 61 Va. App. 125, 131 (2012) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). We may look to legal precedent to "ascertain the ordinary and plain meaning of a [statute]." *Perry v. Commonwealth*, 84 Va. App. 165, 170 (2025). And when multiple statutes share the "same general or common purpose or are parts of the same general plan," they may be read in pari materia. *Lucy v. Cnty. of Albemarle*, 258 Va. 118, 129 (1999) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)).

Each exemption claimed by CSN features an exclusive-use requirement. Code §§ 58.1-3609, -3617 operate in tandem to exempt from taxation property of "religious and charitable organization[s]," but only such property "used *exclusively* for charitable, religious or educational purposes." Code § 58.1-3617 (emphasis added). Code § 58.1-3606(A)(2) exempts from taxation property of "churches or religious bodies . . . *exclusively* occupied or used for religious worship or for the residence of the minister." (Emphasis added). And Code § 58.1-3606(A)(5) exempts from taxation property "belonging to and actually and *exclusively* occupied and used by the Young Men's Christian Associations [YMCAs] and similar religious associations" that are "conducted not for profit but *exclusively* as charities." (Emphases added).

In *Emmanuel Worship*, we considered how to strictly construe the term "exclusive." There, we confronted the question of whether the exclusive-use provision of Code

- 10 -

§ 58.1-3606(A)(2) should be read to deny exemption to a church's property that the church leased to a commercial business. *Emmanuel Worship*, 80 Va. App. at 112. We emphasized that "[i]t is the use to which property is put, not the use to which profits that are realized from such property are put, that determines whether the property shall be exempt." *Id.* at 114 (quoting *Mariner's Museum*, 255 Va. at 47). Because the property was not used solely for "worship or the residence of a minister," we held that the church failed to satisfy the exclusive-use requirement of Code § 58.1-3606(A)(2). *Id.* at 113, 115.

Here, the Property is not exempt from taxation under the claimed exemptions because Abundant Life's use of the Property is disqualifying. Reading Code §§ 58.1-3606, -3609, -3617 in pari materia, strict construction of the exemptions requires CSN to demonstrate that the Property is (1) used *solely* for "charitable, religious or educational purposes," (2) *solely* "occupied or used for religious worship or for the residence of the minister," or (3) actually and *solely* "occupied and used by" a nonprofit, wholly charitable "religious association" similar to the YMCA. *See id.* at 113 (defining "exclusively" as "solely" for purposes of Code § 58.1-3606(A)(2)).

First, Abundant Life's business use of the Property is not a charitable, religious, or educational use and is, therefore, fatal to CSN's claim for exemption under Code §§ 58.1-3609, -3617. Abundant Life used the Property during CSN's normal operating hours, while CSN's regular staff were present. While providing services at CSN, Abundant Life's Mendoza charged "$100 per partial hour and up." At five hours per week, Abundant Life yields at least $2,000 in monthly revenue from its use of the Property. That CSN charged Abundant Life no rent aside from minor incidental expenses is irrelevant to whether the Property is used exclusively—or solely—for charitable, religious, or educational purposes under Code §§ 58.1-3609, -3617. Instead, the exemption applies to property belonging to an entity classified

- 11 -

as "a religious and charitable organization" and only to the extent the property is "used in accordance with the purpose for which the organization" is so classified. Code §§ 58.1-3609(A), -3617. Reverend Weaver recognized CSN's "mission is not to provide mental health services to college kids," distinguishing itself from Abundant Life. He went so far as to say he "struggled" with the idea of permitting Abundant Life to use the Property in the first place since "it seemed . . . a little bit of a mission creep for our organization." Abundant Life's activities cannot be regarded as part of CSN's use of the Property for nonprofit religious purposes.

Second, Abundant Life's business use of the Property is likewise incompatible with the claim that the Property is "exclusively occupied or used for religious worship." Code § 58.1-3606(A)(2). Again, Abundant Life's for-profit professional business was not part of CSN's mission and activities, and as the trial court found, "Abundant Life is a professional counseling business which charges clients by the hour, an activity which cannot reasonably (let alone strictly) be characterized as religious worship." The trial court's finding that the Property was not used exclusively for "religious worship" is not plainly wrong or without evidentiary support. And given CSN does not use the Property "for the residence of a minister," its claim for the Code § 58.1-3606(A)(2) exemption also fails.

Third, Abundant Life's use of the Property is fatal to CSN's claim for exemption under Code § 58.1-3606(A)(5). CSN is required to prove that it "actually and exclusively occupied and used" the Property not-for-profit but *exclusively* as a charity. Code § 58.1-3606(A)(5). Strict construction of the term "exclusively" demands that CSN prove that it *solely* used the Property and for a nonprofit purpose. Aside from other organizations related to Virginia Tech using the Property, Abundant Life used the Property to conduct its for-profit professional business unrelated to CSN's mission while simultaneously occupying the same space as CSN. This use,

- 12 -

alone, is enough to demonstrate that CSN did not "actually and exclusively" use and occupy the Property.

Because CSN is unable to satisfy the exclusive-use requirements of Code §§ 58.1-3606, -3609, -3617, the trial court did not err in holding CSN is not entitled to claim these exemptions.

II. Tax Apportionment[6]

CSN argues that, even if Abundant Life's for-profit use of the Property defeats its claims to the Code §§ 58.1-3606, -3609, -3617 exemptions, it should still be entitled to an apportioned tax liability to account for the parts of the Property not disqualified by Abundant Life's for-profit use. Because Abundant Life's use of the Property cannot be parsed from that of the myriad other organizations using it, we disagree.

Code § 58.1-3603 does not create an independent tax exemption. Instead, it directs assessing officers to offset a taxpayer's liability where its property is independently eligible for exemption but for revenue-generating uses of the property:

> Whenever any building . . . exempt from taxation . . . is a source of revenue or profit, . . . all of such buildings . . . shall be liable to taxation as other land and buildings in the same county, city or town. When a part but not all of any such building . . . however, is a source of revenue or profit, and the remainder of such building . . . is used by any organization exempted from taxation . . . only

[6] The County contends CSN failed to preserve its arguments under Code § 58.1-3603 since (1) CSN failed to plead a claim under the provision, and (2) CSN did not raise the issue until it filed an "unauthorized" post-trial reply brief. The County's preservation arguments fail. First, CSN was not required to pray for relief under Code § 58.1-3603. The County, as tax assessor, is mandated by Code § 58.1-3606 to offset the tax liability of CSN if at least a portion of the Property is exempt. *Cnty. of York v. Peninsula Airport Comm'n*, 235 Va. 477, 483-84 (1988). By challenging the County's assessment, CSN invoked the machinations of the assessment apparatus, seeking a new assessment altogether. The trial court had to consider whether Code § 58.1-3603 offsets CSN's tax liability should the Property not be exempt. Moreover, in claiming CSN's brief was unauthorized, the County finds itself untethered from the record. The trial court explicitly authorized CSN's post-trial reply brief: "[CSN] will do the reply brief within seven days." And we construe the trial court's refusal to rule on the issue as an implicit rejection of CSN's arguments. *See Mayr*, 293 Va. at 79 n.3.

- 13 -

> such portion as is a source of profit or revenue shall be liable for taxation.

Code § 58.1-3603(A). By its terms, Code § 58.1-3603 defines the default policy of the Commonwealth to deny exemption from taxation to properties that generate revenue for the taxpayer. The tax assessor may deviate from this default policy, but only if the "*exempt and nonexempt parts are separable.*" *Richmond v. United Givers Fund, Inc.*, 205 Va. 432, 440 (1964) (quoting 2 Thomas M. Cooley, *Cooley on Taxation* § 688 (4th ed. 1924)) (opining that tax apportionment is unavailable where there was "no separation or division of space in the building" and where separate entities "used the same space or rooms, from time to time, as the occasions required"). The onus is on the assessing entity to apply Code § 58.1-3603 when necessary. *See Cnty. of York v. Peninsula Airport Comm'n*, 235 Va. 477, 483-84 (1988) (discussing Code § 58.1-3603 among other "procedures and safeguards mandated by statute" in assessing property taxes).

CSN's claim for apportionment under Code § 58.1-3603(A) fails because the statute is not applicable. First, the provision is concerned with property that is a "source of revenue or profit" to the taxpayer-claimant. Our Supreme Court's decision in *Mariner's Museum* is instructive. There, a museum leased substantial realty to a hospital, generating $5 million in revenue over a 3-year period and for a 72-year term. 255 Va. at 43. Although both the museum and the hospital were tax-exempt charitable corporations, and the hospital used the property exclusively for nonprofit hospital purposes, the Court concluded that the museum forfeited its exemption by using the property as "a source of revenue or profit" to itself that was substantial and not merely incidental. *Id.* at 45-47. The Court stressed that "[i]t is the use to which property is put" that is determinative, and the use that mattered for purposes of the museum's claim was not the hospital's activities but the museum's use of the property as a source of substantial revenue or profit. *Id.* at 47. Here, CSN derived no revenue or profit from Abundant Life's use

of the Property—indeed, Abundant Life is not even subject to a lease. Code § 58.1-3603(A) denies otherwise available exemptions where property serves as a source of revenue or profit. But CSN does not run afoul of this provision. It has no exemption in the first place, by virtue of the exclusive-use requirements of the exemptions it claims.

In addition, CSN's use of the Property cannot be disentangled from Abundant Life's use. The Property is a 2-story building with a total of 4 enclosed spaces, exclusive of bathrooms—a first-floor common room, a library with 2 armchairs and a couch, a classroom large enough to fit 12 people with a long table and chairs, and a second-floor loft with a kitchen. The library is used for "discipleship ministries" by "staff or people from outside the [CSN]," and the discussion groups and short courses "meet everywhere in the building" and "every night of the week." Amidst all these meetings, Abundant Life apparently meets with clients in these same spaces during the busy weekday hours. The record provides no indication that Abundant Life's use of the Property is limited to particular portions, and there is no basis to demarcate the area subject to taxation, unlike the hospital's lease of a specific parcel of land in *Mariner's Museum*.

Consequently, the trial court did not err by refusing to apportion CSN's tax liability under Code § 58.1-3603.

III. Expert Witness[7]

CSN concludes its appeal by arguing the trial court abused its discretion in excluding McDermott's expert testimony. It argues McDermott's testimony related to a material issue in the case and the trial court's exclusion of his testimony could have affected the verdict. Assuming, without deciding, the trial court erred in excluding McDermott's testimony, we find that putative error harmless.

Exclusion of expert testimony is "reversible error when the record fails to show plainly that the excluded evidence could not have affected the verdict." *Commonwealth v. Proffitt*, 292 Va. 626, 642 (2016) (quoting *Barkley v. Wallace*, 267 Va. 369, 374 (2004)); *see also* Code § 8.01-678. Logically, this Court "consider[s] the potential effect of the excluded evidence in light of all the evidence that was presented to the" trier of fact. *Id.* (quoting *Barkley*, 267 Va. at 374). But "it is not enough for an appellant to demonstrate that a trial court [may have] erred; to be entitled to relief, he must demonstrate that [any alleged] error was significant enough to merit reversal." *Shaw v. Commonwealth*, 304 Va. 217, 234 (2025) (alterations in original) (quoting *Welsh v. Commonwealth*, 304 Va. 118, 140 (2025)). Non-constitutional errors are "harmless when we 'can conclude that the error did not influence the jury or had but slight effect.'" *Id.* (quoting *Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022)).

---

[7] The County argues CSN's objection on this issue is waived since CSN failed to include a transcript of the hearing on the County's motion *in limine* in the record. Here, CSN challenged the trial court's ruling made from the bench at trial where it "repeat[ed]" its rulings from the motion *in limine* hearing. Because the record is "complete to the degree necessary to adjudicate" this issue, transcripts from the motion *in limine* hearing are dispensable. *Smith v. Commonwealth*, 56 Va. App. 351, 379 (2010) (Petty, J., dissenting) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)); *see also* Rule 5A:8(b)(4)(ii); *Shiembob v. Shiembob*, 55 Va. App. 234, 246 (2009) (providing that if "the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to" (quoting *Turner*, 2 Va. App. at 99)).

Although the trial court found that Abundant Life's commercial business activities could not "reasonably (let alone strictly) be characterized as religious worship," McDermott's testimony would not have moved the needle. Mendoza did not testify to her religious convictions or perspectives in carrying out her work for Abundant Life. In fact, Mendoza did not testify at all. McDermott's testimony would have been speculative conjecture outweighed by facts in the record about Abundant Life's commercial use of the Property. Indeed, the record only contains Reverend Weaver's statements distancing the work of CSN from Abundant Life. He characterized Abundant Life's "mission" as providing "mental health" services to "young people." In doing so, he admitted that he "struggled" with deciding to allow Abundant Life to use the Property, viewing it as a "little bit of a mission creep for our organization." Based on these facts and in the absence of testimony from Mendoza about how religious beliefs and practices feature in Abundant Life's work, the trial court's judgment would not have changed in light of McDermott's testimony.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed*.